2023 IL App (1st) 191503

No. 1-19-1503

Opinion filed March 27, 2023.

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 24881 |
| | ) | |
| DEVOIS TURNER, | ) | The Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justice Coghlan concurred in the judgment and opinion.
Justice Pucinski dissented, with opinion.

**OPINION**

¶ 1    Defendant Devois Turner appeals from the trial court's order granting the State's motion

to dismiss his petition filed under the Post-Conviction Hearing Act (Act). 725 ILCS 5/122-1

*et seq.* (West 2018). On appeal, defendant asserts that postconviction counsel failed to provide

reasonable assistance. For the following reasons, we affirm the trial court's judgment.

¶ 2                    I. BACKGROUND

¶ 3                         A. Trial

¶ 4     Defendant was charged with the first degree murder of 87-year-old Joe Miller, as well as home invasion, armed robbery, and residential burglary. Defendant's girlfriend, Malia Nelson, was charged as an accomplice and subsequently agreed to testify against him pursuant to a plea agreement.

¶ 5     Briefly stated, Nelson, who was serving a 17-year prison term for this offense, testified that on the day in question, Miller was living in a senior citizen apartment near 13th Street and Harding Avenue. She and Miller were friends, but their relationship was "semi-sexual." She was unemployed and would clean his apartment or have sex with him for money. In addition, Nelson knew that Miller kept money and a gun in a locked cabinet in his bedroom. About one month before this incident, she had taken the cabinet keys and approximately $3500, while he slept.

¶ 6     On September 22, 2017, Nelson and defendant, whom she was dating at the time, discussed a plan to steal money from Miller to buy drugs, but ultimately agreed that Nelson would simply ask Miller for the money. Defendant, against Nelson's wishes, wanted to accompany her in case they needed to scare Miller. When Nelson ultimately told defendant she had changed her mind, he accused her of trying to hide something and dragged her toward Miller's building, where she reiterated that she would "handle this by [her]self." Defendant, however, forcibly accompanied her inside. She signed into the visitors log as "L. Lewis."

¶ 7     When the pair arrived at Miller's apartment, he initially told Nelson to return the following day but then allowed her to use the bathroom. Afterward, Nelson saw defendant standing behind Miller, who was sitting in a chair. Defendant had one arm around Miller's neck and held a gun to the right of it. Nelson asked what defendant was doing but he told her to "shut

the fuck up, [and] let [him] handle it." Upon defendant's inquiry, Miller said he had no money in the apartment. A struggle then ensued. In addition, defendant directed Nelson to look for Miller's money. Unable to find the key to the cabinet, Nelson unsuccessfully tried to open the cabinet with a kitchen knife, cutting herself in the process. Miller, sounding frightened, called her name during this time.

¶ 8     In the kitchen, Nelson saw defendant force Miller to the floor. Miller's eyes were closed, and he was unresponsive when Nelson shook him. Although Nelson thought that he was dead, defendant said he would be fine and ordered Nelson to bind his hands, threatening to shoot Nelson if she did not. Nelson did so with a phone cord and subsequently gained entry to the cabinet. She later learned that defendant had taken money, a gun, and a Crown Royal bag filled with coins. They used the money to buy drugs and, two weeks later, defendant sold the gun for $150. Nelson acknowledged that she had a 25-year history of substance abuse, had used cocaine on the day in question and had seven prior narcotics convictions.

¶ 9     Leroy Miller, the victim's son, testified that after being unable to reach his father, a security guard let him into the apartment, where his father lay dead on the kitchen floor with his hands bound above his head. He later recognized Nelson from surveillance footage, although he could not remember her name. He also discovered that some coins and a handgun were missing from the cabinet.

¶ 10     The police confirmed that the logbook was signed by "L. Lewis" and "M. Partee." In addition, the police learned Nelson's name and arrested her. Miller's son identified her from a lineup, and her DNA was found on the phone cord, as well as on three of the four knives recovered from the apartment. After interviewing Nelson, the police were looking for defendant, who was arrested the following day. He gave a videotaped interview discussing the events

culminating in Miller's death and claimed that the robbery was Nelson's idea. He denied that he used a weapon against Miller or that Miller struggled. Furthermore, Miller was alive when defendant left.

¶ 11    Dr. Valerie Arangelovich, a pathologist, opined that Miller died from stress due to restraint and robbery but identified coronary atherosclerosis as a contributing factor. She ruled his death a homicide.

¶ 12    The defense presented no witnesses and defendant chose not to testify. Upon the court's inquiry, defendant confirmed his understanding that he had a right to testify and that, after speaking with his attorneys, he did not want to do so. Defendant also confirmed that no one was forcing or coercing him not to testify and that he was exercising his own free will.

¶ 13    The jury found defendant guilty of first degree murder and he was sentenced to 27 years in prison.

¶ 14                                B. Direct Appeal

¶ 15    On direct appeal, we rejected defendant's assertions that the trial court erred by declining to provide a jury instruction on the lesser offense of involuntary manslaughter and by denying his request to provide the jury with his proposed non-pattern jury instruction regarding his addiction to narcotics. We corrected the mittimus to reflect the correct amount of presentencing custody credit. *People v. Turner*, 2013 IL App (1st) 111716-U.

¶ 16                           C. Postconviction Proceedings

¶ 17    On August 22, 2014, defendant filed a *pro se* postconviction petition, asserting, among other things, that trial counsel was ineffective for not "basing a defense on her own reasonable investigation," but, instead, relying "exclusively on cross-examination of State witnesses to discredit the State's case." In addition, counsel "impede[d]" his right to testify. Defendant

"repeatedly told his defense counsel that he wanted to testify as to his version of what happened," but counsel threatened to withdraw if he did, stating that his testimony would be viewed as "self-serving and harmful to the defense." Furthermore, counsel did not heed defendant's request to negotiate an agreement for him to plead guilty to second degree murder. Instead, counsel said the court would not allow him to plead guilty to that offense. Appellate counsel was ineffective for failing to raise those claims on direct appeal.

¶ 18    The trial court then appointed postconviction counsel, who subsequently filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Jul. 1, 2017). Counsel certified that (1) he consulted with defendant "by phone, mail, electronics means or in person to ascertain his contentions of deprivations of constitutional rights," (2) he "obtained and examined the record of proceedings at the trial and sentencing in this case," and (3) he did not prepare a supplemental postconviction petition "as the petitioner's previously-filed *pro se* petition for post-conviction relief adequately sets forth the petitioner's claims of deprivation of his constitutional rights."

¶ 19    The State moved to dismiss, arguing that defendant's ineffective assistance of counsel claims were meritless. Specifically, trial counsel's decision not to present evidence was a matter of strategy, and the record rebutted defendant's claim that trial counsel impeded his desire to testify. Defendant also failed to show that the result of the proceeding would have been different. Furthermore, defendant failed to provide any affidavit or supporting documents showing that counsel did not attempt to negotiate a lesser charge.

¶ 20    At a hearing on the parties' pleadings, postconviction counsel argued that while the trial court had admonished defendant about his right to testify, the colloquy between the court and defendant did "not in any way capture the intimidation that existed at the time of that

proceeding." In addition, "when you look at that issue that he raised and combination with others he's raised, he's, in effect, saying that he was intimidated by this trial counsel." When the postconviction court asked for proof of this intimidation, counsel argued, "Well, it's inferred, Judge, in a s[e]nce that in his pleadings he said that he was [*sic*] prudently asked his lawyer to testify. His lawyer continued to sho[o]t him down." Counsel advocated for a third stage hearing to "really get to the bottom of it."

¶ 21    The trial court granted the State's motion to dismiss. First, the court found that defendant failed to make a substantial showing to rebut the presumption that trial counsel's decisions were a matter of valid strategy. In addition, he did "not show or even allege the existence of any specific evidence his counsel failed to discover." The court further found that the record rebutted defendant's claim that trial counsel did not allow him to testify. In any event, defendant failed to state what his testimony would have been, and the jury saw defendant's videotaped statements in which he admitted to his involvement in the robbery, notwithstanding that his statements had minimized his involvement. Moreover, defendant had no constitutional right to a plea bargain, and there was no evidence that the State made an offer, that defendant would have accepted one, or that the trial court would have concurred.

¶ 22                                    II. ANALYSIS

¶ 23    On appeal, defendant solely assertsthat he did not receive the reasonable assistance of postconviction counsel. He attacks postconviction counsel's decision not to amend and support his claims that trial counsel failed to engage in plea negotiations, impeded his right to testify, and failed to present a defense based on counsel's own investigation. We review this issue *de novo*. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 17.

¶ 24 The Act provides a collateral means for a defendant to challenge a conviction or sentence for a violation of a constitutional right. *People v. Jones*, 211 Ill. 2d 140, 143 (2004). At the second stage of postconviction proceedings, the trial court must determine whether the petition and accompanying documentation make a substantial showing of a constitutional violation. *People v. Cotto*, 2016 IL 119006, ¶ 28. Postconviction counsel may amend the petition, and the State may move to dismiss it. *Id.* ¶ 27 (citing 725 ILCS 5/122-4, 122-5 (West 2010)).

¶ 25 The Act provides for a "reasonable" level of assistance from counsel. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). To assure reasonable assistance, Rule 651(c) imposes specific duties on postconviction counsel. *People v. Turner*, 187 Ill. 2d 406, 410 (1999). The rule's primary purpose is to ensure that counsel shapes the petition's claims into proper legal form and presents them to the court. *People v. Kuehner*, 2015 IL 117695, ¶ 20.

¶ 26 To that end, Rule 651(c) states that the record

"shall contain a showing, which may be made by the certificate of petitioner's attorney, that [1] the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, [2] has examined the record of the proceedings at the trial, and [3] has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

The filing of a Rule 651(c) certificate creates a rebuttable presumption that postconviction counsel provided the defendant with reasonable assistance. *People v. Collins*, 2021 IL App (1st) 170597, ¶ 31. Additionally, the certificate is counsel's official representation to the court that he has fulfilled the duties listed therein. *People v. Perkins*, 229 Ill. 2d 34, 50 (2007). If postconviction counsel files a certificate, "[i]t is defendant's burden to overcome this

presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 27    In this case, postconviction counsel filed a Rule 651(c) certificate, creating a presumption that defendant received reasonable assistance. Accordingly, it is incumbent upon defendant to rebut this presumption.

¶ 28                                    A. Plea Bargaining

¶ 29    First, we address defendant's assertion that postconviction counsel failed to file an affidavit to better explain the basis of defendant's claim that trial counsel disregarded his request to engage in plea bargaining for a lesser second degree murder conviction.

¶ 30    Postconviction counsel is required to investigate and properly present the defendant's claims. *People v. Davis*, 156 Ill. 2d 149, 164 (1993). That being said, not every petition can be amended to set forth a substantial constitutional claim. *People v. Bass*, 2018 IL App (1st) 152650, ¶ 16. If amendments would only further a frivolous or meritless claim, the amendments are not "necessary" within the meaning of Rule 651(c). *People v. Greer*, 212 Ill. 2d 192, 205 (2004). Furthermore, while counsel may raise additional issues, he is not required to do so. *Pendleton*, 223 Ill. 2d at 476.

¶ 31    Here, the *pro se* petition claimed that trial counsel repeatedly refused "to get together with the State's Attorney" to discuss a plea to second degree murder. Thus, the petition clearly conveyed that there were no plea discussions. Defendant now asserts, however, that his petition "failed to reveal whether a plea was offered or other outside-plea bargaining circumstances." Notwithstanding our liberal reading of defendant's petition, the petition did not include an allegation that the State made a plea offer, that trial counsel prevented defendant from accepting one, or that plea bargaining had ensued at all. Postconviction counsel was not required to raise

this additional contention either, particularly considering that it contradicts the claim that defendant's petition did raise. *Id.* Moreover, defendant has not otherwise demonstrated that counsel was unreasonable for failing to amend this claim or attach supporting documentation.

¶ 32 A defendant has no constitutional right to be offered the opportunity to plea bargain (*People v. Palmer*, 162 Ill. 2d 465, 476-77 (1994)), although his right to the effective assistance of counsel does apply to aspects of the plea-bargaining process (*Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985)). In addition, even where trial counsel's performance was deficient with respect to plea bargaining, a defendant must still demonstrate prejudice. *People v. Hatchett*, 2015 IL App (1st) 130127, ¶ 36. Furthermore, a "defendant cannot claim prejudice from defense counsel's failure to extract an offer from the State." *Id.* ¶ 37.

¶ 33 Here, defendant's claim that postconviction counsel was unreasonable is as speculative as his claim that trial counsel was ineffective for failing to negotiate a plea agreement. Even now, defendant does not affirmatively represent that the State made an offer, and we cannot speculate that the State would have been willing to enter into a plea agreement in this case. See, *e.g.*, *Palmer*, 162 Ill. 2d at 481. Furthermore, defendant has not explained how trial counsel could have negotiated a plea to second degree murder under these facts. See *People v. Hayes*, 2022 IL App (4th) 210409, ¶ 55 (stating that second degree murder requires that the individual committing first degree murder (1) is acting under a sudden, intense passion due to serious provocation by the victim or (2) subjectively, but unreasonably, believes circumstances justify the use of self-defense). Because no amendment or affidavit could have rendered this claim meritorious, postconviction counsel cannot be expected to have done more.

¶ 34                                    B. Right to Testify

¶ 35    Next, we reject defendant's assertion that postconviction counsel provided unreasonable assistance by raising a new claim at the hearing on his petition without amending the petition to include that claim. In his petition, defendant alleged that trial counsel "impede[d]" his decision whether to testify. At the hearing on the petition, however, postconviction counsel argued that trial counsel "intimidated" defendant out of testifying. This argument was not a new claim. On the contrary, the petition's allegation that trial counsel "impede[d]" his decision would certainly encompass counsel's alleged act of "intimidating" defendant. We decline to split hairs.

¶ 36    Defendant observes that when postconviction counsel argued defendant had been "intimidated," the court responded, "Where do I have proof of that? Where is there a showing?" Yet, the court's remarks do not show that it did not understand this claim to have been raised in the petition. Instead, they show that the court found the claim to be unsubstantiated, a finding that defendant does not dispute on appeal. Because counsel's oral argument did not raise a new claim, no amendment was necessary.

¶ 37    Defendant also faults postconviction counsel for not amending the petition to provide additional detail or supporting documentation with respect to defendant's decision not to testify. He argues that this assertion, like other claims in his petition, was fatally vague, in improper form, and not supported by any evidence. Indeed, the *pro se* petition did not set forth the details of his potential testimony. Yet, we reiterate that not every petition can be amended to set forth a substantial constitutional claim. *Bass*, 2018 IL App (1st) 152650, ¶ 16. If amendments would only further a frivolous or meritless claim, then the amendments are not "necessary" within the meaning of Rule 651(c). *Greer*, 212 Ill. 2d at 205.

¶ 38    Defendant contends that he could have provided postconviction counsel with an affidavit. It does not follow, however, that defendant's affidavit would have actually supported his claim that trial counsel intimidated him or otherwise interfered with his right to testify; rather, discussions between defendant and postconviction counsel may have painted a different picture. In addition, postconviction counsel may have learned that defendant's proposed testimony would have harmed his case. Nothing in the record negates these possibilities. See *Perkins*, 229 Ill. 2d at 52 (while an attorney's Rule 651(c) certificate can be rebutted, "nothing in the record on appeal contradicts counsel's certificate asserting that there were no amendments necessary for adequate presentation of petitioner's claims"). Moreover, providing an affidavit from defendant, setting forth substantive details regarding his account of the offense, cannot be considered a routine amendment. *Cf. Turner*, 187 Ill. 2d at 413 (finding that counsel failed to amend the petition to allege ineffective assistance of appellate counsel, which would have prevented the defendant's claims from being waived). Accordingly, defendant has not rebutted the presumption that postconviction counsel provided reasonable assistance.

¶ 39                                  C. Investigation and Defense

¶ 40    Defendant further faults postconviction counsel for not supporting his claim that trial counsel failed to conduct a reasonable investigation and present evidence. Defendant suggests that if counsel truly appreciated the need to provide supporting documentation, counsel would have done so.

¶ 41    In *Perkins*, our supreme court rejected the appellate court's finding that because postconviction counsel's arguments were meritless, counsel was unfamiliar with the Act. *Perkins*, 229 Ill. 2d at 50. The supreme court found that counsel was presumed to know the law and, given the State's arguments, it was hard to believe that counsel was not familiar with the

applicable legal standards. *Id.* at 50-51. In addition, while postconviction counsel's arguments may not have been especially compelling and may have lacked legal merit, this did not show that a better argument was available to counsel. *Id.* at 51. The supreme court refused to make such an assumption, noting that "[c]ounsel's argument was apparently the best option available based on the facts." *Id.*

¶ 42    As the reasoning in *Perkins* shows, defendant's position fails to acknowledge that sometimes counsel's best option is not a great one.

¶ 43    Defendant's *pro se* petition did not specify what line of defense or specific evidence trial counsel should have pursued. In addition, postconviction counsel is not required to engage in a fishing expedition to find evidence outside of the record that might support the defendant's claims. *Bass*, 2018 IL App (1st) 152650, ¶ 16. Upon speaking with defendant, postconviction counsel may have learned that defendant had no specific leads that trial counsel should have pursued. Furthermore, postconviction counsel may have determined that trial counsel did pursue other lines of defense. It is also possible that even if trial counsel had failed to pursue other lines of inquiry, such inquiries would not have uncovered useful information. Moreover, any witness with relevant information may have refused to provide an affidavit or, worse yet, relayed information that was harmful to defendant's position.

¶ 44    Where a petition is not supported by affidavits or other evidence, a court can ordinarily presume that postconviction counsel made a concerted effort to obtain such things in support of the defendant's claims but was unable to do so. *People v. Johnson*, 154 Ill. 2d 227, 241 (1993). Nothing in the record rebuts this. *Cf. Id.* at 241-43 (finding the record contradicted the presumption that counsel tried but was unable to obtain supporting affidavits where counsel informed the court that her schedule had not permitted her to obtain the affidavits and her

certificate stated she had made no attempt to contact two witnesses). Additionally, defendant acknowledges in his opening brief that "the elephant in the room *** is the notion that, perhaps, counsel did not amend the petition because there were no appropriate clarifying facts or supporting evidence available to add." Because postconviction counsel filed a Rule 651(c) certificate, we must presume that this is the case.

¶ 45      Despite defendant's apparent concession, defendant nonetheless presumes that it was possible for postconviction counsel to remedy the foregoing defects by providing supporting documentation. Stated differently, he *presumes* that postconviction counsel's performance was unreasonable. We decline to turn Rule 651(c)'s presumption on its head.

¶ 46                                     D. *Jackson*

¶ 47      Relying on *People v. Jackson*, 2021 IL App (1st) 190263, defendant asserts that we must remand this matter for postconviction counsel to make a record of the specific actions he took in this case.

¶ 48      In *Jackson*, the *pro se* petition asserted that trial counsel was ineffective for failing to introduce the clothing he was wearing at the time of his arrest. Postconviction counsel filed a Rule 651(c) certificate, a supplemental petition, and an affidavit from the defendant, which alleged that he had repeatedly complained about trial counsel, including to her supervisor. Postconviction counsel did not, however, attach an affidavit from trial counsel. At the hearing on the State's motion to dismiss, postconviction counsel argued that because the defendant was wearing the clothes in question at the time of the arrest, they would have been available for trial counsel to present. Ultimately, the trial court dismissed the petition, noting that the defendant had produced nothing to show what happened to the clothing, whether it was available to trial counsel, and whether she chose to ignore it. Defendant appealed, arguing that postconviction

counsel provided unreasonable assistance because the record did not indicate whether she tried to obtain the clothing, the inventory sheet, or arrest photos. *Id.* ¶¶ 4-5, 22-23, 26.

¶ 49    On appeal, the reviewing court recognized that the record must show postconviction counsel complied with Rule 651(c), which can be accomplished by filing a Rule 651(c) certificate. *Id.* ¶¶ 42-43. The court did not acknowledge, however, that where counsel files a Rule 651(c) certificate, a presumption arises that counsel provided reasonable assistance. In addition, the reviewing court stated it could not "find that postconviction counsel's assistance was, in fact, unreasonable, if we do not know whether she attempted to obtain these documents and clothes and what facts she found." *Id.* ¶ 44. The court agreed with the defendant that the record lacked "any indication, one way or the other, about her efforts." *Id.* While the lack of record was ordinarily held against the defendant, "the emptiness of the record created by postconviction counsel is defendant's whole point on appeal." *Id.* ¶ 45.

¶ 50    Citing Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), the reviewing court vacated the trial court's judgment and remanded for further second-stage proceedings, at which "postconviction counsel may further amend and support the petition." *Jackson*, 2021 IL App (1st) 190263, ¶ 46. Counsel was further directed to file a new Rule 651(c) certificate, after which the trial court was to state on the record what attempts postconviction counsel made to determine whether additional evidence existed regarding the defendant's clothing. *Id.* Moreover, "[t]he record should clearly reflect her efforts to obtain the clothing, the jail inventory sheet, and any arrest photos and her efforts to document what was, and was not, available to trial counsel at the time of the suppression hearing and trial." *Id.*

¶ 51    We find that *Jackson* was wrongly decided for several reasons. First, the reviewing court failed to acknowledge the rebuttable presumption that exists when postconviction counsel files a

Rule 651(c) certificate, as counsel had done in that case. In addition, that presumption refutes the reviewing court's finding that the record did not show that counsel provided reasonable assistance. Furthermore, the reviewing court did not find that the defendant had made an affirmative showing that counsel's performance was unreasonable. *Id.* Instead, the court required postconviction counsel to specify what attempts he made to obtain the clothing, the inventory sheet, and arrest photos and to document what was and was not available to trial counsel. Absent any showing of unreasonable assistance in *Jackson*, we heartily reject the notion that a reviewing court may micromanage postconviction counsel and the trial court in this manner. Moreover, the reviewing court improperly invoked Rule 615(b) as a means to disregard Rule 651(c) and our supreme court's jurisprudence thereon.

¶ 52     Defendant argues that

> "[d]eclining to follow the reasoning in *Jackson* would mean that if counsel does not amend second-stage petitions, the court in every case will have to operate under the presumption that counsel tried to make the claims cognizable and searched for exculpatory evidence, even when the record remains silent as to whether counsel actually did so."

Defendant overlooks, however, that when postconviction counsel files a Rule 651(c) certificate, the record is *not* silent as to whether counsel tried to make a defendant's claims cognizable. Furthermore, defendants remain free to rebut that presumption where counsel's performance was nonetheless unreasonable. See, *e.g.*, *Johnson*, 154 Ill. 2d at 241-43. Given *Jackson's* conflict with supreme court jurisprudence, we must decline to follow it.

¶ 53                                    E. *Greer*

¶ 54     Citing *Greer*, defendant further suggests that if postconviction counsel could not amend

the petition and provide required affidavits, counsel was required to withdraw.

¶ 55     In *Greer*, the supreme court rejected the defendant's assertion that postconviction counsel

could not be permitted to withdraw. *Greer*, 212 Ill. 2d at 195-96. Specifically, Rule 651(c) did

not require counsel to advance frivolous claims and "the mere filing of an amended petition by

counsel under such circumstances would appear to violate the proscriptions of Supreme Court

Rule 137." *Id.* at 205-06; see Ill. S. Ct. R. 137 (eff. Jan. 1, 2018) (providing that an attorney's

signature on a document represents that she is filing the document in good faith). Furthermore,

the legislature did not intend that counsel be required to continue representing a defendant on a

frivolous petition and "the attorney is clearly prohibited from doing so by his or her ethical

obligations." (Emphasis omitted.) *Greer*, 212 Ill. 2d at 209.

¶ 56     Thus, *Greer* held that postconviction counsel *may* withdraw if she finds the defendant's

contentions are meritless, not that counsel *must* withdraw in that instance. Additionally, *Greer*

held that postconviction counsel may not himself file a frivolous amended petition that would

violate Rule 137. That being said, *Greer*'s statement that counsel is "prohibited" from continuing

to represent a defendant on a frivolous petition must be understood in the context of the specific

issue before it. We decline defendant's invitation to expand *Greer*. See also *People v. Pingleton*,

2022 IL 127680, ¶ 33 (stating that if "postconviction counsel discovers something that would

ethically prevent him or her from presenting the petitioner's claims, counsel *may* move to

withdraw" (emphasis added)).

¶ 57     Another panel of this court has also observed that while the defendant before it asserted

that counsel acted unreasonably by *not* withdrawing, the defendant in *Greer* argued just the

opposite, that counsel's withdrawal was improper. See *Bass*, 2018 IL App (1st) 152650, ¶ 18. As a practical matter, postconviction counsel cannot be expected to conform his or her performance to what a defendant might prefer with the benefit of hindsight.

¶ 58 We further observe that *requiring* counsel to withdraw after determining that a petition is meritless would pose certain disadvantages to a defendant. It may discourage counsel from making a good faith argument on a defendant's behalf where the merits of his claim present a close call. Additionally, when

> "a *pro se* postconviction petition advances to the second stage on the basis of an affirmative judicial determination that the petition is neither frivolous nor patently without merit, appointed counsel's motion to withdraw *must contain at least some explanation as to why all of the claims set forth in that petition are so lacking in legal and factual support as to compel his or her withdrawal from the case.*" (Emphasis added.) *Kuehner*, 2015 IL 117695, ¶ 27.

This a double-edged sword.

¶ 59 On the one hand, the requirement ensures that counsel has not overlooked an issue found by the trial court to be potentially meritorious. On the other, it may require counsel to make a record of details that a defendant would rather not have shared on the record, particularly with respect to the results of counsel's investigation and his efforts to obtain supporting documentation. The defendant in that instance is also forced to defend his petition against not just the State, but postconviction counsel, whose motion to withdraw may be premised on different grounds. *Pingleton*, 2022 IL 127680, ¶ 41.

¶ 60 Even after *Greer*, the appellate court has held that if postconviction counsel investigates the defendant's claims but finds them to be without merit, he may either (1) withdraw or

(2) stand on the *pro se* petition. See, *e.g.*, *People v. Perry*, 2017 IL App (1st) 150587, ¶ 26; *People v. Pace*, 386 Ill. App. 3d 1056, 1062 (2008). While we recognize that other appellate court decisions have omitted the latter option (see, *e.g.*, *People v. Shortridge*, 2012 IL App (4th) 100663, ¶ 13), the foregoing considerations compel us to adhere to the prior line of cases, with one caveat.

¶ 61    In *Pace*, the reviewing court stated that postconviction counsel's option "is to stand on the allegations in the *pro se* petition *and inform the court of the reason the petition was not amended*." (Emphasis added.) *Pace*, 386 Ill. App. 3d at 1062. It is unclear, however, why counsel would categorically be required to explain the absence of an amended petition, given that there is no categorical requirement for appointed counsel to file one in the first instance. See *Turner*, 187 Ill. 2d at 412. In addition, requiring counsel to provide that explanation would defeat the rebuttable presumption created by filing a Rule 651(c) certificate. Moreover, *Pace* did not consider the potential harm inflicted on a defendant when counsel expresses views that are contrary to the defendant's interests. Accordingly, we disagree with *Pace* to the extent that it requires appointed counsel to explain why the *pro se* petition was not amended.

¶ 62                                III. CONCLUSION

¶ 63    Postconviction counsel filed a Rule 651(c) certificate, creating a presumption that counsel provided reasonable assistance. Defendant did not rebut that presumption. He is not entitled to relief.

¶ 64    For the foregoing reasons, we affirm the trial court's judgment.

¶ 65    Affirmed.

¶ 66    JUSTICE PUCINSKI, dissenting:

¶ 67    This was a horrible crime against an extremely vulnerable victim. No one, least of all me, wants to minimize the terrible events of September 22, 2007, which lead to the death of 87-year-old Joe Miller.

¶ 68    However, I cannot ignore the fact that the decision to testify on his own behalf is one that the defendant, and only the defendant, can make.

¶ 69    Courts routinely ask defendants if they have consulted with their attorneys and if the decision is free and voluntary when they decide not to testify. This leaves a giant information gap that neither the defendant nor the court can adequately fill.

¶ 70    First, looking at it from the defendant's point of view: it is not impossible to imagine that a defendant, who needs to rely on his attorney for the entire trial, would be reluctant to tell the court that the same attorney threatened to withdraw if the defendant went against the attorney's advice not to testify. The risk of the attorney withdrawing after telling the court that the attorney threatened him is too high.

¶ 71    Second, look at it from the court's point of view. The court asks: "Were you threatened in any way to come to the decision not to testify?" and "Is this your free and voluntary decision?" Courts sometimes ask these questions after telling the defendant that the choice is his and his alone, but that is sometimes articulated in a less direct way, if at all. Still, the court thinks it has the information it needs, and I believe most judges would not delve more deeply into conversations between the attorney and the defendant for fear of inadvertently dipping into attorney-client privilege. That means that the court really only has the *pro forma* information it needs to decide if the decision not to testify is truly only the defendant's and truly voluntary.

¶ 72    Third, look at it from the attorney's point of view. While I believe that the vast majority of honorable criminal defense attorneys would never dream of threatening to withdraw if a client

ignored their advice, I can just as easily imagine that there are some attorneys who, for whatever reason, would do exactly that. Those attorneys know they can get away with it because—in the unlikely event a court probed more deeply or, in the extreme, questioned the attorney under oath— the same unscrupulous mindset would do little to prevent the attorney from telling the court, "I did nothing of the sort!" Certainly, no attorney will ever admit in court that he browbeat his client. That would be bad for business, would be bad for his reputation in the court, and would likely lead to an ARDC complaint.

¶ 73    In order to truly discover what is going on with this foundational right of the defendant, courts need to develop more layered questions about the decision not to testify.

¶ 74    The American Bar Association Criminal Justice Section recently released the 2023 Report of its Plea Bargain Task Force.[1] While the report focused on the mechanics of plea bargains, many of its recommendations are instructive for determining if a defendant's decision not to testify is his or hers alone and is truly voluntary.

¶ 75    Each of the principles of the report discussed below apply equally well to plea bargains and the decision to testify or not:

> (1) Principle 2 criticizes the use of "impermissibly coercive incentives or incentives that overhear the will of the defendant." The court needs to know if the defendant's attorney has "impermissibly coerced the defendant." So, while the court asks the defendant if he has been threatened, that question could be broken down into several parts, for example: do you know that you and only you can decide if you will testify? That means that while your attorney can give you advice, you don't have to listen to it. Did your attorney give you

---

[1]The Report may be accessed here: Thea Johnson, *2023 Plea Bargain Task Force Report*, (Am. Bar Ass'n 2023), https://www.americanbar.org/content/dam/aba/publications/criminaljustice/plea-bargain-tf-report.pdf [https://perma.cc/SDY5-QA9F].

advice on testifying? Did he explain his reasons to you? Do you want to ignore that advice? Did your attorney or anyone else threaten to leave your case if you testified? Did you feel threatened by any specific language your attorney or anyone else used in your discussions? Did you feel that it is hopeless to testify because then your attorney would drop out of the case? Did your attorney or anyone else tell you that if you testify, he will not be responsible for the result? Did your attorney or anyone else tell you that you will not be able to appeal if you testify? Did your attorney or anyone else tell you that if you testify you will almost certainly be found guilty?

(2) Principle 7 states, among other things, that the defendant [should] understand the consequences of his decision. For example, the court could ask of the defendant: "Sir, what do you think will happen if you decide to testify?"

(3) Principle 9 states that "defendants should receive all available discovery, including exculpatory materials, prior to the entry of a guilty plea and should have sufficient time to review such discovery before being required to accept or reject a plea offer." The same sense of fairness should govern the defendant's decision to testify. Does the defendant know what the State knows? Is he likely to face some surprise if he testifies? Does he know how any surprise might affect the outcome of the trial? Did he have enough time to go over the discovery material? Did his attorney go over the material with him? Does he believe there is something missing from the discovery? What? Does he have any questions of the court about any of the discovery?

(4) Principle 11 discusses collateral consequences of a guilty plea. There are likely collateral consequences of testifying. The court could ask, for example, "What do you think is the best that can happen if you testify? What do you think is the worst that can happen?

What do you think the jury (or I, the judge) will think if you do not testify? Do you know that no one can ever hold it against you in any way if you decide not to testify? Did your attorney or anyone else tell you that if you testify you will be in prison longer?"

¶ 76     Underlying all of the ABA Task Force recommendations is the goal of asking fewer yes/no questions, putting all questions in simple language, and making sure that the defendant has no follow up questions of his own.

¶ 77     In this case we do not know what the defendant would have said because his postconviction counsel did not amend his petition by adding an affidavit to that effect. In a case with no physical evidence leading to this defendant, and only the word of another defendant in this matter who cut a deal, we cannot say that his testimony would not have helped his defense. We might think it unlikely, but we cannot say for sure that what he told the jury would have had no effect. For this reason, I dissent and believe this should be remanded for new second stage proceedings with new postconviction counsel.

***People v. Turner*, 2023 IL App (1st) 191503**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 07-CR-24881; the Hon. Alfredo Maldonado, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Adrienne E. Sloan (Lorelee Kampschneider, law student), of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Retha Stotts, and James Naughton, Assistant State's Attorneys, of counsel), for the People. |