2023 IL App (1st) 220098-U
No. 1-22-0098
Order filed May 30, 2023

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 27592 |
| | ) | |
| WAYNE WILLIS, | ) | Honorable |
| | ) | Joann F. Rosado, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justice Pucinski concurred in the judgment.
Presiding Justice Lavin dissented.

**ORDER**

¶ 1    *Held:* Reversed and remanded where the record rebuts the presumption that postconviction counsel read the record and amended the claims pursued to conform with the Post-Conviction Hearing Act.

¶ 2    Counsel need not litigate each claim in a *pro se* postconviction petition. But they must amend the claims they do pursue to conform with the Post-Conviction Hearing Act. Here, counsel pursued three ineffective assistance claims as they appeared in Willis's petition, though the record showed Willis had misidentified a key witness. The record thus rebuts the presumption, arising

from the Rule 651(c) certificates, that counsel read the record and amended the claims she pursued to conform with the Act. We reverse and remand.

¶ 3                                    Background

¶ 4     At the first stage of postconviction proceedings, the trial court advanced Wayne Willis's petition within the 90-day deadline and appointed counsel. Eight-and-a-half years later, the trial court dismissed the petition at a second-stage hearing that Willis did not attend. On appeal Willis challenges counsel's performance.

¶ 5     Before postconviction proceedings began, Willis directly appealed his convictions for aggravated criminal sexual assault and his cumulative term of 33 years' imprisonment. Unfortunately, that appeal took a protracted path. See *People v. Willis*, No. 1-07-1333 (May 15, 2009) (unpublished order under Illinois Supreme Court Rule 23); *People v. Willis*, No. 108573 (Ill. Sept. 29, 2010) (supervisory order); *People v. Willis*, No. 1-07-1333 (Nov. 29, 2010) (unpublished order under Illinois Supreme Court Rule 23); *Willis v. Illinois*, 567 U.S. 948 (June 29, 2012).

¶ 6     We ultimately affirmed. We found no reversible error when assessing his contentions that (i) the admission of DNA evidence without testimony from the relevant lab analysts denied him his right to confrontation, and (ii) the State failed to establish the *corpus delicti*. See *People v. Willis*, 2012 IL App (1st) 071333-U.

¶ 7     Willis began these proceedings by mailing a petition from the Department of Corrections. He attacked as ineffective the assistance he received from counsel at trial and on appeal by raising several claims. We discuss the pertinent ones. Willis also attacked the trial court's jurisdiction to preside over his prosecution and the propriety of the pretrial proceedings leading to his

indictments. We need not discuss these claims because counsel's litigation of the ineffective assistance claims leads us to reverse and remand.

¶ 8    Willis supported his claims with pages from the record of his direct appeal. He also attached a copy of a reviewing court order and hand-annotated printouts of statutes and bills.

¶ 9    The trial court advanced Willis's petition to the second stage. There, two lawyers appeared on Willis's behalf. Assistant Public Defender Denise Avant filed a Rule 651(c) certificate shy of four years after Willis petitioned. She certified that Willis's filing alone "adequately states" his claims. Later, Assistant Public Defender Camille Calabrese filed a Rule 651(c) certificate after another about two-and-a-half years. She certified to having made amendments "necessary" to present Willis's claims.

¶ 10    Before filing these certificates, neither attorney filed an amended postconviction petition. And neither certificate prompted a response from the State.

¶ 11    An additional year and a half or so passed before the State moved to dismiss Willis's petition. The State challenged its sufficiency, arguing (i) the absence of a verification affidavit certifying Willis brought his claims truthfully and in good faith; (ii) the absence of affidavits, records, or other evidence supporting Willis's factual claims; and (iii) the sufficiency of Willis's legal claims.

¶ 12    After meeting with Willis, Calabrese filed a verification affidavit: "I, Wayne Willis, a prisoner incarcerated in Hill Correctional Center, have read and understand the above Petition for Post Conviction Relief. All the facts presented [are] true and correct to the best of my recollection." Calabrese intended the affidavit to address the State's first and second contentions and said so at the hearing on the motion to dismiss.

¶ 13    Before the hearing, Calabrese attached Willis's affidavit to a filing she styled, "Response to State Motion to Dismiss Pro Se Post Conviction Petition and Petitioner's Motion to Attach Notarized Affidavit to Pro Se Post Conviction Petition." In it, she recounted her and Willis's failed efforts at communicating. She also recounted having "physically obtain[ed] the correctly notarized affidavit."

¶ 14    Affidavit in hand, Calabrese amended Willis's *pro se* petition, "Counsel reasserts all arguments in the Petitioner's pro se post conviction proceeding * * * [and] requests that said notarized affidavit be incorporated into Petitioner's pro se post conviction petition[.]"

¶ 15    Below that, she stated, "Counsel reasserts all of Petitioner's claims contained in his pro se post conviction petition for which counsel *did file a 651(c)*." (Emphasis added). She did not elaborate. Years earlier, her Rule 651(c) certificate did not limit her efforts to certain claims. In full, she certified:

> 1. I have consulted with the Defendant/Petitioner Wayne Willis, by mail to ascertain his/her contentions: in addition, I have discussed the case via prison phone call(s).
>
> 2. I have examined the report of proceedings at [trial], appellate material, and court files and have conducted interviews necessary to investigate Defendant/Petitioner's contentions, as well as records of court proceedings.
>
> 3. I have made any amendments to [the] motion necessary for the adequate presentation of Defendant/Petition's contentions and defects in same.

¶ 16    APD Avant likewise did not limit her certification:

1. I have consulted with the petitioner, Wayne Willis, by letter and telephone, to ascertain his contentions of deprivations of constitutional rights;

2. I have reviewed a copy of the petitioner's transcript, presided over by the Honorable Thomas Gainer;

3. I have also reviewed the opening brief, State brief, reply brief, Petition for Leave to Appeal, and the Appellate Court decision in cause No. 1-07-1333 and briefs in support of and opposition to Petition For writ of Certiorari to the United States Supreme Court;

4. I have spoken with trial counsel, Sharon Sims, and attempted on two separate occasions to reach co-counsel and former Assistant Public Defender, Andrew T. [Northrup], now in the Maryland Public Defenders Office;

5. I have not prepared a Supplemental Post-Conviction Petition, as petitioner's pro se petition adequately states his claims of deprivation of his constitutional rights.

¶ 17    Read together, these certificates cataloged consultations with Willis (and with one of two trial attorneys, as related in Avant's certificate), examinations of pertinent filings and transcripts, and decisions not to amend Willis's *pro se* petition.

¶ 18    The crux of Willis's petition concerned claims of ineffective assistance of counsel. Willis raised all claims through that lens. Critical support for three ineffective assistance claims pertinent here appeared in an attachment, "Appendix E. 'Brady Evidence.'"

¶ 19    On appeal, the parties refer to this attachment as "unspecified" and "unidentified." Yet, the attachment appears as a single page from a pretrial motion styled "Motion to Bar Witness

Testimony." This motion appears in the impounded common-law record Willis prepared for this appeal. On this single page, Willis highlighted:

> "[T]he defense believes that Ms. Rosier and Ms. Lombatos are neither deceased nor unwilling to answer to a state subpoena and that the State is refusing to call her to insulate her from any cross-examination as to her criminal conduct while she worked for Orchid Cellmark and the Illinois State Police, respectively."

¶ 20    In his petition, Willis alleged that trial counsel provided ineffective assistance by: (i) failing "to interview and subpoena two of the State's witnesses once the State refused to call the two expert witnesses"; (ii) failing to investigate a *Brady* violation after "finding out that the prosecutor was bringing in *** substitute witnesses, in an attempt to insulate Ms. Rosier and Ms. Lombatos from cross examination as to her criminal conduct while she worked for Orchid Cellmark, and the Illinois State Police"; and (iii) failing to demonstrate "the evidence that was being suppressed by the state was favorable[.]" In addition, Willis attacked appellate counsel for failing to raise these claims.

¶ 21    Moving to dismiss, the State attacked Willis's claims, describing them as lacking "sufficient facts to which [it could] respond."

¶ 22    At trial, the State argued DNA extracted from the complainant matched a DNA profile obtained from Willis. To prove this, the State called Dr. Jennifer Reynolds to testify about reviewing the work of two non-testifying Cellmark analysts, Leslie Roacher and Ellie Sammon. That these analysts would not testify was a point of contention between the parties. Willis's two trial attorneys moved to bar Dr. Reynold's testimony. In a written motion, they cited reporting on

fraud inside labs across the country to argue the trial court should not presume that the analysis would be reliable evidence. But they misidentified the analysts as "Ms. Rosier and Ms. Lombatos."

¶ 23 Willis's single page and petition highlighted this mistaken passage to support his postconviction claims that the State covered up misconduct in its investigation and that his trial attorneys did nothing about it.

¶ 24 The trial court granted the State's motion to dismiss. It agreed the petition lacked factual support for its legal claims, noting it saw no "additional information or evidence from anybody saying this is what would have happened instead." Also, the trial court rejected all claims of ineffective assistance on their merits and mentioned the *Brady* claim specifically, finding, "There doesn't seem to be any *Brady* violation that was proven or any new information that proved in fact there was a *Brady* violation at this point in time."

¶ 25                                            Analysis

¶ 26 Willis argues postconviction counsel provides a petitioner with reasonable assistance by choosing one of two options: (i) litigating or (ii) moving to withdraw. Here, litigating would have required the APDs to "make the amendments necessary to adequately present [] Willis'[s] claims, provide required documentation, or explain its absence." Moving to withdraw would have required them to "explain why [Willis's] claims are frivolous." But in Willis's view, they did neither and "stood on" his claims, thus providing unreasonable assistance. And Willis contends this court may not presume otherwise because the Rule 651(c) certificates did not "substantially comply" with that rule.

¶ 27 The State disagrees with both contentions. The State defends the sufficiency of the Rule 651(c) certificates and adds that Willis has failed to rebut the presumption arising from them,

namely, that both attorneys provided Willis with reasonable assistance. The State also argues counsel need not litigate claims that lack merit. In the State's view, Willis falsely excludes another option available to counsel, "where no discernible amendments would have advanced petitioner's claims, counsel may reasonably choose to stand on the *pro se* petition."

¶ 28    The parties recognize their positions track a current split in appellate court caselaw on how to apply two Illinois Supreme Court decisions: *People v. Greer*, 212 Ill. 2d 192, 211-21 (2004) (holding, appointed counsel may move to withdraw after determining petition frivolous and patently meritless), and *People v. Kuehner*, 2015 IL 117695 (holding, counsel must explain why claims lack merit when moving to withdraw after judicial determination that petition neither frivolous nor patently meritless). Compare, *e.g.*, *People v. Bass*, 2018 IL App (1st) 152650 ¶¶ 17, 22 (rejecting claim that counsel's failure to either amend the petition or withdraw deprived petitioner of reasonable assistance) with *People v. Pace*, 386 Ill. App. 3d 1056, 1063 (2008) (finding error where counsel pursued "another option" and trial court permitted counsel to dismiss client's petition and refused to re-instate petition at petitioner request). We note, parenthetically, that the supreme court may soon resolve this dispute. *People v. Huff*, 2022 IL App (1st) 201278-U, *pet. for leave to appeal allowed*, No. 128492 (Sept. 28, 2022).

¶ 29    But this is not a case about whether appointed counsel may stand on a *pro se* petition. Calabrese pursued all claims in the *pro se* petition by amending Willis's petition in response to the motion to dismiss. Thus, this case concerns reasonable assistance and compliance with Rule 651(c) duties during active litigation.

¶ 30     Before we address this point, we consider and reject Willis's contention that the Rule 651(c) certificates did not suffice to raise a presumption that counsel provided reasonable assistance.

¶ 31     Petitioners like Willis are entitled to assistance when litigating their petitions at the second stage. *People v. Smith*, 2022 IL 126940, ¶ 13 (citing *Greer*, 212 Ill. 2d at 204). Together, the Act and Supreme Court Rule 651 "ensure that post-conviction petitioners in this State receive a reasonable level of assistance[.]" *Smith*, 2022 IL 126940, ¶ 13 (citing *People v. Owens*, 139 Ill. 2d 351, 359 (1990)).

¶ 32     Rule 651 (c), "Record for Indigents; Appointment of Counsel," provides:

> The record filed in [the trial] court shall contain a showing, which may be made by the certificate of petitioner's attorney, that [(i)] the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, [(ii)] has examined the record of the proceedings at the trial, and [(iii)] has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions.

¶ 33     The filing of a Rule 651(c) certificate suffices to create a presumption on appeal that a petitioner received reasonable assistance of counsel. *Smith*, 2022 IL 126940, ¶ 29.

¶ 34     Both APDs filed certificates stating they had complied with Rule 651. Read together, and in context, these certificates catalogued their consultations with Willis (and with one of two trial attorneys), examinations of pertinent filings and proceedings, and decisions not to amend Willis's

*pro se* petition. Either certificate, alone, created a presumption that defendant received reasonable assistance. *Id*. ¶¶ 12, 29-30, 38.

¶ 35    Nonetheless, Willis attacks the certificates as failing to replicate the language of Rule 651. The premise of Willis's argument finds no support in the text of the rule. Subsection (c) requires a showing of compliance to appear in the record and does not require a written certificate at all. See also *People v. Jones*, 2011 IL App (1st) 092529, ¶ 24 (finding, "nothing in Rule 651(c) that suggests the certificate is intended to be a comprehensive recounting of all of postconviction counsel's efforts").

¶ 36    Even so, Willis attacks Avant's certificate because, rather than certify that she had "examined the record of the proceedings at the trial," Avant certified that she had "reviewed a copy of the petitioner's transcript." We reject the idea that a transcript is somehow different from a record of the proceedings. See Ill. S. Ct. R. 323(b) (directing court reporters "who transcribe[] a report of proceedings" to "certify to [their] accuracy"). We also note that Avant certified she had reviewed the briefs filed on direct appeal and this court's prior decision, not to mention the parties' pleadings filed in the United States Supreme Court.

¶ 37    Willis likewise attacks Calabrese's certificate because she certified that she had consulted him to learn his "contentions," not his "constitutional contentions." We reject the idea that her certification did not encompass Willis's claims. Logically, "contentions" include constitutional ones. And textually, Willis raised only "constitutional contentions" in his petition, the same document Calabrese cited in her certificate.

¶ 38    But our finding that these certificates suffice to raise the presumption counsel provided him with reasonable assistance does not foreclose Willis from attempting to refute it. *Smith*, 2022

IL 126940, ¶ 38. We still must measure counsel's certifications against the balance of their performance presented across the record. *People v. Addison*, 2023 IL 127119, ¶ 26. We review *de novo* an attorney's compliance with Rule 651(c). *People v. Suarez*, 224 Ill. 2d 37, 42 (2007).

¶ 39     Doing so, we see why the parties mistakenly frame their dispute as whether counsel "stood on" Willis's *pro se* petition. Avant stood on the *pro se* petition by expressly disclaiming a need to amend it and not amending it. Calabrese made a similar certification and, at the hearing on the State's motion to dismiss, purported to "stand on" Willis's *pro se* petition.

¶ 40     But the record shows Calabrese's actions and filings belied her self-characterization. She actively litigated all *pro se* claims when responding to the State's motion to dismiss. This matters because we must look at the claims counsel chose to pursue and then measure her litigation of those claims against what reasonable counsel would have done under similar circumstances. *Addison*, 2023 IL 127119, ¶ 26.

¶ 41     Here, the State had argued for procedural default of all claims, given the absence of Willis's personal verification affidavit. Calabrese responded by amending the petition---specifically, by attaching a verification affidavit and expressly "reassert[ing] all arguments contained in the Petitioner's *pro se* post conviction proceeding[.]" Thus, she no longer stood on Willis's *pro se* petition, but actively litigated each *pro se* claim.

¶ 42     Assessing her performance, Calabrese should have properly identified the witnesses for Willis's ineffective assistance claims. The single page from a pretrial motion styled "Motion to Bar Witness Testimony," appended to Willis's petition, included several typos, like writing "Lombatos," a likely misspelling of a name for a witness in a separate prosecution. (As the State

notes, Sandra Lambatos performed forensic testing in *People v. Williams*, 238 Ill. 2d 125 (2010), affirmed by *Williams v. Illinois*, 567 U.S. 50 (2012).)

¶ 43    Calabrese could not reasonably litigate Willis's ineffective assistance claims without correcting this basic factual mistake. To do so, she needed only to read the transcript where she would have learned the correct identity of the second Cellmark analyst as Ellie Sammon. But, the record shows she did not make this necessary amendment either. Thus, the record rebuts the presumption that she provided Willis with reasonable assistance. *Addison*, 2023 IL 127119, ¶ 26. Contrary to her Rule 651(c) certificate, the record shows she failed to examine the record of the proceedings at the trial and amend Willis's petition to adequately present these claims.

¶ 44    As our supreme court has repeatedly held, we do not ask whether Willis's claims had merit. *Addison*, 2023 IL 127119, ¶¶ 35, 42; *Suarez*, 224 Ill. 2d at 48. Given counsel's violation of Rule 651(c), we remand so Willis can receive the limited right to counsel provided by the Act, and the circuit court can rule on these claims. *Id.*; *People v. Turner*, 187 Ill. 2d 406, 415-17.

¶ 45    Reversed and remanded.

¶ 46    PRESIDING JUSTICE LAVIN, dissenting:

¶ 47    On appeal, defendant solely asserts that postconviction counsel was required to attach affidavits or other documentation supporting his claims and, if counsel could not do so, she was required to withdraw. Defendant has not argued that counsel should have amended his petition to correct the identity of the Cellmark analysts involved in his case, notwithstanding the majority's undertaking to make this argument for him.

¶ 48    "Where a petition is not supported by affidavits or other evidence, a court can ordinarily presume that postconviction counsel made a concerted effort to obtain such things in support of

the defendant's claims but was unable to do so." *People v. Turner*, 2023 IL App (1st) 191503, ¶ 44 (citing *People v. Johnson*, 154 Ill. 2d 227, 241 (1993)). As this court stated in *Turner*, "defendant's position fails to acknowledge that sometimes counsel's best option is not a great one." *Turner*, 2023 IL App (1st) 191503, ¶ 42. Furthermore, postconviction counsel was not required to withdraw if she was unable to obtain supporting documents. *Id*. ¶¶ 56-60.

¶ 49    Here, defendant's postconviction attorneys filed Rule 651(c) certificates, creating a presumption that defendant received the reasonable assistance of counsel. Defendant has not rebutted that presumption. I would affirm the trial court's judgment.