2022 IL App (1st) 210040

No. 1-21-0040

Opinion filed November 23, 2022

Third Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 07456 |
| | ) | |
| ADRIAN GARCIA, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justice McBride concurred in the judgment and opinion.
Justice Gordon dissented, with opinion.

**OPINION**

¶ 1    Defendant, Adrian Garcia, appeals from an order of the circuit court of Cook County

dismissing his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS

5/122-1 *et seq.* (West 2018)). On appeal, defendant contends that the court erred in summarily

dismissing his petition where he raised a sufficient claim that his trial counsel was arguably

ineffective in failing to investigate and present an exculpatory witness. Defendant maintains that

the witness provided an affidavit that presented a version of events that was different than the

version presented by the State witnesses at trial. Defendant asserts that if counsel had investigated

and presented the exculpatory witness, it is arguable that the result of his trial would have been different. In the alternative, defendant contends that the proposed testimony of the exculpatory witness supports a colorable claim of actual innocence. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 2                                  I. BACKGROUND

¶ 3                              A. Defendant's Jury Trial

¶ 4      A full recitation of the facts from defendant's jury trial can be found in this court's order from defendant's direct appeal. See *People v. Garcia*, 2020 IL App (1st) 170007-U. As relevant here, the record shows that defendant was charged along with two codefendants, Mario Ascensio and Mauricio Ortiz, with first degree murder and armed robbery following the beating death of Armando Corral on April 11, 2011. Corral was beaten to death and robbed of his wallet by the three men near the La Roka bar on the 3000 block of South St. Louis Avenue in Chicago.

¶ 5      At trial, Mayra Dominguez testified that in the early morning hours of April 11, she was working on her computer in her second-floor apartment on South St. Louis Avenue. Dominguez heard bottles breaking and "punching sounds" outside through the open window of her apartment. She looked out the window and observed three men beating up Corral. She saw Corral fall to the ground as the three men continued to beat him. Dominguez recognized two of the men: defendant and Ortiz. Dominguez had known defendant for more than 10 years, and he lived across the street from her. Dominguez observed defendant kick Corral in his head and jump on Corral's chest while holding onto a fence. Dominguez saw Ortiz kick Corral in his arms, legs, and head while the third assailant, who Dominguez did not recognize, kicked Corral's legs. Dominguez walked away from the window to call police. When she returned, she saw defendant kick Corral in the head and then

reach into Corral's pockets and take his wallet. Dominguez later identified defendant in a police lineup as the person she observed jumping on Corral's chest.

¶ 6    David Silva testified that on the night of April 10, he went to the La Roka bar with two of his friends. There, he saw Ascensio and defendant, who he knew from the neighborhood. Silva later left the bar and went to a friend's house nearby where he continued to drink. Later that night, he heard a commotion outside and saw through a window Ascensio and another man standing over a third man who was lying on the sidewalk. Silva observed Ascensio throw a bottle at the man on the ground, but then Silva moved away from the window and did not see or hear anything else.

¶ 7    Ascensio testified on behalf of the State pursuant to a plea agreement. Ascensio testified that in exchange for his guilty plea to armed robbery and his testimony against defendant in this case, the State agreed to dismiss the first degree murder charge against him. Ascensio acknowledged that he was a participant in the robbery and beating of Corral. Ascensio was at the La Roka bar that night and saw Corral get into an altercation with another man. After the bar closed, Corral left, followed by defendant and Ortiz. Ascensio left after them and observed Ortiz punch Corral in the face a few houses away from the bar. After Ortiz punched Corral, Corral fell to the ground. Defendant and Ortiz then started kicking Corral. Defendant held onto a fence and jumped on Corral's chest. Ascensio threw a bottle at Corral and kicked him in the legs. Once the three men stopped beating Corral, defendant bent down and took Corral's wallet. They then walked back to the corner by La Roka and went through the contents of Corral's wallet. The three men ran when they heard sirens. Later, after the police arrived, Ascensio observed defendant standing in front of his house across the street from where the beating took place.

¶ 8    Officer Oscar Lopez testified that around 2 a.m. on April 11, he received a call that "five guys [were] beating up one guy." Lopez and his partner, Officer Violet Rey, arrived on the scene

and observed Corral, who was bleeding and unresponsive, lying face down on the ground. Lopez and Rey approached defendant, who was standing on the sidewalk in front of his residence across the street from where the officers discovered Corral. Defendant told the officers that three men had beaten Corral with a bottle. Officer Lopez observed that defendant's hand was swollen, cut, and bleeding. When Officer Lopez asked defendant about his hand, defendant responded that he had intervened to help Corral while he was being attacked. Defendant later told police that Alejandro Rios was one of the attackers who defendant punched while defending Corral.

¶ 9 Officers investigated Rios and found that he had trouble walking and required the assistance of crutches. After officers spoke with Dominguez, they placed defendant under arrest. The police collected various pieces of physical evidence from the scene and defendant, including broken beer bottles with bloodstains on them, blood-stained T-shirts, and defendant's clothing, including his shoes. A forensic investigator also took blood swabs from the back of defendant's hands. Police also collected physical evidence from Ortiz and Ascensio.

¶ 10 A forensic scientist testified that Corral's blood was found on defendant's right shoe. Blood collected from defendant's left hand contained DNA from at least three people. However, the major profile did not match defendant or his codefendants, but Corral could not be excluded. An expert in the field of shoe impressions also testified that the shoe impressions on Corral's white shirt were consistent with the shoes recovered from defendant and not the shoes collected from his codefendants.

¶ 11 The jury found defendant guilty of first degree murder and armed robbery. The trial court subsequently sentenced defendant to a 33-year term of imprisonment for first degree murder and a consecutive 7-year sentence for armed robbery. Defendant appealed, contending that the court erred in allowing the State to introduce a prior consistent statement made by Dominguez. This

court rejected defendant's claim, finding that he had failed to preserve the issue by raising it in the trial court and that the evidence at his trial was not so closely balanced that this court could excuse his forfeiture of the issue under the plain error doctrine. *Id*. ¶ 70.

¶ 12                                B. Defendant's Postconviction Petition

¶ 13    On July 27, 2020, defendant filed the *pro se* postconviction petition at bar. In his petition, defendant contended that his constitutional rights were violated because his trial counsel failed to present the testimony of two witness: Alex Acosta and Martha Seija. Defendant maintained that the testimony of these two witnesses would have corroborated his initial statement to police that he was attempting to help Corral and was not involved in the beating. Defendant did not attach an affidavit from Acosta to his petition but did attach an affidavit from Seija. Seija's affidavit is included with both Spanish and English translations. The Spanish version of the affidavit is signed by Seija and notarized, but the English translation is not. A notation at the top of the English version of her affidavit states that Seija "preferred the Spanish version to be notarized because Spanish is her preferred language."

¶ 14    In her affidavit,[1] Seija averred that she knew Dominguez, who lived in the same apartment building as Seija's mother located on the 3000 block of St. Louis Avenue. Seija also knew defendant from the neighborhood. Dominguez and defendant were close friends but eventually had a falling out. Dominguez told Seija that she hated defendant and wanted him to move out of the neighborhood so that she would not have to see him again. Seija averred that she lived a few buildings down from her mother's apartment but was staying with her mother on the night of April 10. In the early morning hours of April 11, she heard glass bottles breaking on the street outside.

---

[1]The quotations in this paragraph come from the English translation of Seija's affidavit.

Seija also heard her mother shout in Spanish "leave him alone already." When Seija looked out of the window, she saw defendant "trying to stop a fight between two men who were punching, kicking, stomping, and throwing bottles at a man who fell to the ground." Defendant kept telling the two men to stop and stood in front of them to "prevent further blows against the man who was still on the ground." After the fight was over, Seija heard sirens and saw an ambulance arrive for the man on the ground. Seija later learned that defendant was convicted of the beating "because of false declarations made by [Dominguez]." Seija averred that Dominguez lied about defendant because she despised him.

¶ 15    The court dismissed defendant's petition in a written order. In its order, the court summarily dismissed defendant's contentions with regard to Acosta because defendant had failed to attach an affidavit from Acosta to his petition and did not explain the absence of the affidavit. With regard to Seija, the court found that Seija's proposed testimony about Dominguez's alleged mental state would have been inadmissible hearsay. The court also found that defendant did not allege that he ever apprised trial counsel of Seija or her potential testimony prior to trial. Nor did Seija aver that she ever communicated with defendant's trial counsel. Finally, the court found that defendant could not establish prejudice based on Seija's affidavit. The court noted that, on direct appeal, this court found that the evidence overwhelmingly established defendant's guilt. The court found that Seija's testimony would not arguably change the outcome of the trial. The court therefore found that defendant's claims were frivolous and patently without merit. This appeal follows.

¶ 16                                II. ANALYSIS

¶ 17    On appeal, defendant raises two alternate theories of relief. First, defendant contends that the court erred in dismissing his petition where he sufficiently presented a claim that his trial

counsel was arguably ineffective in failing to investigate and present Seija's testimony and that defendant was arguably prejudiced by counsel's deficient performance.[2] Defendant maintains that Seija was an eyewitness to the offense and presented a version of the events that directly contradicted the version presented by the State's witnesses while corroborating defendant's account that he gave to police officers on the scene. In the alternative, defendant contends that his claim of ineffective assistance outlines a colorable claim of actual innocence.

¶ 18                                 A. The Post-Conviction Hearing Act

¶ 19    The Act provides a three-stage mechanism by which a criminal defendant may assert that his conviction was the result of a substantial denial of his constitutional rights. 725 ILCS 5/122-1 (West 2018); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). At the first stage of proceedings, as here, defendant is required to set forth only the "gist" of a constitutional claim, and the circuit court may summarily dismiss the petition if it finds that the petition is frivolous or patently without merit, *i.e.*, that it has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 9, 16 (2009). A petition has no arguable basis in law or fact where it is based on "an indisputably meritless legal theory or a fanciful factual allegation." (Internal quotation marks omitted.) *People v. Allen*, 2015 IL 113135, ¶ 25 (quoting *Hodges*, 234 Ill. 2d at 16).

¶ 20                                      1. *Ineffective Assistance*

¶ 21    Defendant contends in the instant appeal that he was denied the effective assistance of counsel at his trial. Claims of ineffective assistance of counsel are evaluated under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). *People v. Enis*, 194 Ill. 2d 361, 376 (2000). Under that test, the defendant must demonstrate that counsel's performance

---

[2]Defendant appears to abandon his claims with regard to Acosta.

was objectively unreasonable compared to prevailing professional standards and that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Patterson*, 2014 IL 115102, ¶ 81. At the first stage of proceedings under the Act, a petition alleging ineffective assistance of counsel may not be summarily dismissed if (1) it is arguable that counsel's performance fell below an objective standard of reasonableness and (2) it is arguable that the defendant was prejudiced. *Hodges*, 234 Ill. 2d at 17. We review the summary dismissal of a postconviction petition *de novo*. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 18.

¶ 22     In evaluating counsel's performance, we recognize the well-established presumption that counsel acted reasonably. *People v. Cloutier*, 191 Ill. 2d 392, 402-03 (2000). Similarly, we evaluate the reasonableness of counsel's investigation "by applying a heavy measure of deference to counsel's judgment." *Id.* (citing *People v. Orange*, 168 Ill. 2d 138, 149 (1995)). It is defendant's burden to overcome these presumptions, establishing at this stage of proceedings that it is at least arguable that his trial counsel acted unreasonably. In this case, that requires a showing that counsel conducted an unreasonable investigation in failing to discover Seija as a potential witness before trial. We find that defendant has failed to do so.

¶ 23     Seija's affidavit shows that on the night of the incident, she spent the night at her mother's apartment. However, Seija did not live at her mother's apartment. Seija's mother's apartment is three lots away from the La Roka bar. Seija's actual residence, however, is nine lots away, nearly half a block from the La Roka bar.[3] Defendant therefore asks this court to hold that trial counsel

---

[3]It is worth noting that Seija's affidavit does not state where she lived at the time of the incident. Her affidavit lists her residence at the time she signed the affidavit, but does not state whether she lived at that address or somewhere else on the night of the incident. It is clear, however, that she did not live at the same apartment building as her mother. The parties' arguments before this court seem to suggest that Seija's residence on night of the incident was the same as it was at the time she signed the affidavit.

may be arguably deficient if he fails to investigate and interview every person who lives on the same block of the incident. This is not a case where defendant told trial counsel about a witness and counsel declined to investigate or interview the witness. Nor is this a case where a witness was listed in a police report or otherwise identified in discovery and counsel declined to investigate. This case concerns a previously unknown witness who only came forward nine years after the incident and four years after defendant was convicted and sentenced.[4] Defendant's petition merely represents that Seija "was a witness but never called upon." It is unreasonable for this court to find that counsel was arguably deficient in failing to investigate this witness sooner.

¶ 24    Defendant seems to suggest that trial counsel could have and should have discovered Seija simply by investigating potential witnesses who lived at Seija's mother's apartment building. Both the record and Seija's affidavit belie this inference. First, three other people involved in this case, Rios, Arcelia Gonzalez, and Dominguez, lived in the same building as Seija's mother. None of these witnesses seemingly alerted defense counsel to the fact that Seija was a potential witness. Even assuming defense counsel spoke to Seija's mother, who did live in the building, when investigating other potential witnesses in the building, Seija did not aver that she told her mother what she had seen. Accordingly, we find that defendant has failed to establish that his trial counsel arguably provided unreasonable assistance in failing to investigate and present Seija as a witness.

¶ 25    Defendant has also failed to demonstrate that he was arguably prejudiced by counsel's performance. In order for a defendant to show that he was arguably prejudiced by trial counsel's allegedly deficient performance, he must demonstrate that there is a reasonable probability that the result of his trial would have been different. *Strickland*, 466 U.S. at 694. The most cogent

---

[4]Defendant was sentenced on August 4, 2016, and Seija's affidavit is dated July 1, 2020.

summation of the evidence presented of defendant's guilt at his trial can be found in this court's ruling on defendant's direct appeal. There, this court found that the evidence presented "overwhelmingly established defendant's guilt" even if the State's case was not "airtight." *Garcia*, 2020 IL App (1st) 170007-U, ¶ 70. That overwhelming evidence presented has not changed. Our task, therefore, is to determine whether the well-pled facts in Seija's affidavit are sufficient to contradict the overwhelming evidence presented such that it is arguable that the result of defendant's trial would have been different. A review of the record establishes that it would not have been.

¶ 26 First, Seija averred that when she first looked out the window, she saw defendant "trying to stop a fight between two men" and a "man who fell on the ground." Seija therefore did not see the beginning of the altercation. Before she looked out the window, Seija heard her mother shout in Spanish to "[l]eave him alone already." This would imply that the altercation had been ongoing before Seija looked outside. Thus, Seija's account cannot serve to contradict the testimony of defendant's codefendants and Dominguez. Notably, Dominguez testified that she saw defendant and his codefendants throwing bottles at Corral and beating him up *before* the victim fell to the ground. Ascensio's testimony corroborates this account. Seija's affidavit makes clear that she did not see any of the altercation before the victim was on the ground. Witnesses throughout trial also spoke of three men attacking Corral, not two as Seija averred in her affidavit. Even defendant told police officers on the scene that he had seen three men attacking Corral.

¶ 27 Seija's affidavit also does not contradict the forensic evidence that corroborates the accounts given by the other eyewitness. Notably, a forensic scientist testified that Corral's blood was found on defendant's right shoe. Blood collected from defendant's left hand contained DNA from at least three people. However, the major profile did not match defendant or his codefendants,

but Corral could not be excluded. An expert in the field of shoe impressions also testified that the shoe impressions on Corral's white shirt were consistent with the shoes recovered from defendant and not the shoes collected from his codefendants. This is consistent with Dominguez and Ascensio's testimony that defendant stomped on Corral's chest while Corral was on the ground and the testimony from the medical examiner that Corral suffered several rib fractures and hemorrhaging in his abdomen, consistent with severe blunt force trauma to the chest. Seija did not aver that she saw someone other than defendant stomp on Corral's chest to offer an alternate explanation for the severe trauma to Corral's chest. Thus, the physical evidence explicitly corroborates the testimony given at trial and explicitly contradicts Seija's account.

¶ 28 Seija's affidavit does not even corroborate defendant's version of the events despite defendant's contentions to the contrary. As noted, defendant told officers that he observed three men beat Corral with a bottle. Defendant also told the officers that one of the men beating Corral was Rios, and defendant punched Rios in the nose while he was defending Corral. The evidence presented at defendant's trial, however, demonstrated that Rios was not present and could not have been involved in the beating. This court found in ruling on defendant's direct appeal that "the evidence established defendant did not intervene in an attack by three men on Corral or break up a fight between Rios and Corral." Seija averred that she observed only two men, not three, beating Corral while defendant attempted to protect him. Seija did not aver that she saw defendant punch anyone while defending Corral but that defendant merely stood in front of the attackers and asked them to stop. Accordingly, we find that defendant has failed to establish that he was arguably prejudiced by trial counsel's allegedly deficient performance. We therefore hold that the trial court did not err in summarily dismissing his petition where defendant failed to raise an arguable claim of ineffective assistance of trial counsel.

¶ 29                                    2. *Actual Innocence*

¶ 30    Defendant nonetheless raises an alternative theory of relief based on the allegations in his petition and Seija's affidavit. Defendant contends that Seija's affidavit also supports a colorable claim of actual innocence. Defendant asserts that Seija's account, taken as true, would have exculpated defendant of the charged offense and is so conclusive that it likely would have changed the result on retrial. Defendant maintains that Seija's account of the incident is not positively rebutted by the record and places the evidence presented at trial in a different light.

¶ 31    First, we must recognize that defendant has forfeited this claim for review on appeal by failing to raise it in his postconviction petition. Defendant concedes that he did not raise a claim of actual innocence in his *pro se* petition but contends that we should relax this procedural bar for claims of actual innocence. Section 122-3 of the Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2018). We cannot excuse forfeiture caused by a defendant's failure to include an issue in his postconviction petition. *People v. Reed*, 2014 IL App (1st) 122610, ¶ 43. Our supreme court has repeatedly held that we cannot overlook the forfeiture provision of the Act and that this court does not have the authority to address postconviction claims raised for the first time on appeal. See, *e.g.*, *People v. Jones*, 213 Ill. 2d 498, 507 (2004); *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006).

¶ 32    Nonetheless, as we will explain below, defendant's claims as supported by Seija's affidavit are insufficient to meet the standards required for a claim of actual innocence at the first stage of postconviction proceedings. The evidence in support of a claim for actual innocence must be (1) newly discovered, (2) material and not merely cumulative, and (3) of such conclusive character that it probably would change the result on retrial. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009).

¶ 33    At the outset, we recognize that defendant raises his claim of actual innocence as an alternate theory of relief. However, we must point out the conflicts that arise from defendant raising this claim in conjunction with his ineffective assistance of trial counsel claim. First, a claim of actual innocence must be "free-standing." *People v. Hobley*, 182 Ill. 2d 404, 443 (1998). "A 'free-standing' claim of innocence means that the newly discovered evidence being relied upon 'is not being used to supplement an assertion of a constitutional violation with respect to [the] trial.' " *Id.* at 443-44 (quoting *People v. Washington*, 171 Ill. 2d 475, 479 (1996)). Here, defendant is relying on Seija's affidavit both in support of his claim of ineffective assistance of trial counsel and in support of his claim of actual innocence. Thus, his claim of actual innocence is not "free-standing."

¶ 34    Second, evidence in support of a claim of actual innocence must be "newly discovered." *People v. Edwards*, 2012 IL 111711, ¶ 32. Newly discovered evidence means the "evidence was discovered after trial *and could not have been discovered earlier through the exercise of due diligence.*" (Emphasis added.) *People v. Coleman*, 2013 IL 113307, ¶ 96. Here, the entire premise of defendant's ineffective assistance of trial counsel claim is that trial counsel could have discovered this evidence before trial through the exercise of due diligence. Thus, this same evidence could not then be considered "newly discovered" for the purpose of a claim of actual innocence. However, because defendant raises his claim of actual innocence as an alternate theory of relief, and because, as discussed below, we nonetheless reject this claim because we find that the evidence was not of such a conclusive character that it would probably change the result on retrial, we will allow some leeway in addressing this claim.

¶ 35    In support of his claim that Seija's affidavit supports a claim of actual innocence, defendant relies largely on the supreme court's decision in *People v. Robinson*, 2020 IL 123849. In *Robinson*,

the supreme court stated that in assessing whether the petition satisfies the threshold for a colorable claim of actual innocence, the court "considers only whether the new evidence, if believed and not positively rebutted by the record, could lead to acquittal on retrial." *Id.* ¶ 60. The court explained that affidavits are not positively rebutted by the record simply because they contradict the evidence presented at trial. *Id.* Rather, "[f]or new evidence to be positively rebutted, it must be clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible." *Id.* In concluding that the defendant presented an arguable claim of innocence, the court relied on the fact that "no physical or forensic evidence linked [the defendant] to the crimes" and that no eyewitnesses identified him "as being involved or even present at the time of the relevant events." *Id.* ¶ 82. Rather, the only evidence supporting the defendant's guilt was his own confession and testimony that he had confessed to others. *Id.*

¶ 36     Here, we find that the newly discovered evidence in Seija's affidavit is not of such a conclusive character that it is more likely than not that no reasonable juror would find defendant guilty beyond a reasonable doubt. As discussed (*supra* ¶ 26), Seija's affidavit makes clear that she did not see the beginning of the altercation. She also did not describe what she saw at the end of the altercation. Her affidavit therefore could not serve to contradict the testimony of the State witnesses who saw defendant attack Corral, jump on his chest, and take Corral's wallet after the beating. Nor can Seija's affidavit contradict the forensic evidence presented. As discussed, a forensic scientist testified that Corral's blood was found on defendant's right shoe. Blood collected from defendant's left hand contained DNA from at least three people. However, the major profile did not match defendant or his codefendants, but Corral could not be excluded. An expert in the field of shoe impressions also testified that the shoe impressions on Corral's white shirt were

consistent with the shoes recovered from defendant, and not the shoes collected from his co-defendants. This is consistent with Dominguez and Ascensio's testimony that defendant stomped on Corral's chest while Corral was on the ground, and the testimony from the medical examiner that Corral suffered several rib fractures and hemorrhaging in his abdomen, consistent with severe blunt force trauma to the chest. Seija did not aver that she saw someone other than defendant stomp on Corral's chest to otherwise explain the severe trauma to Corral's chest. Thus, the physical evidence explicitly corroborates the testimony given at trial and explicitly contradicts Seija's account. This is therefore not a situation like *Robinson* where the evidence tying defendant to the offense was tenuous. Rather, the State presented copious evidence of defendant's involvement, which "overwhelmingly established defendant's guilt." *Garcia*, 2020 IL App (1st) 170007-U, ¶ 70. We therefore find that even if defendant's claim of actual innocence were not forfeited and not subsumed by his claim of ineffective assistance of trial counsel, it would nonetheless fail.

¶ 37                                 III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 39    Affirmed.

¶ 40    JUSTICE GORDON, dissenting:

¶ 41    I must respectfully dissent. In my view, defendant's petition sets forth an arguable claim that his trial counsel was ineffective for failing to investigate and present Seija's exculpatory account of the attack and should have been advanced to the second stage on that basis. Regarding deficient performance, the majority's opinion relies heavily on the presumption that counsel's investigation was reasonable. However, this is a first-stage petition, and our supreme court has explained that consideration of whether a counsel's failure to call a witness was a matter of trial strategy is "inappropriate" at the first stage, where a "more lenient formulation" of the *Strickland*

test applies. *People v. Tate*, 2012 IL 112214, ¶¶ 19, 22 ("[S]trategy argument is inappropriate for the first stage, where the test is whether it is arguable that counsel's performance fell below an objective standard of reasonableness and whether it is arguable that the defendant was prejudiced."). Moreover, it is well-settled that trial counsel has a professional duty to conduct "reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; see also *People v. Domagala*, 2013 IL 113688, ¶ 38. Where, as here, " ' "the record establishes that counsel had reason to know, from an objective standpoint, that a possible defense *** was available, failure to investigate fully can constitute ineffective assistance of counsel." ' " *Domagala*, 2013 IL 113688, ¶ 38 (quoting *Brown v. Sternes*, 304 F.3d 677, 692 (7th Cir. 2002)).

¶ 42    At this early stage, it is not legally frivolous to suggest that, where defendant's defense at trial relied on his initial statement to police that he intervened in the attack to aid the victim, competent counsel would have sought to identify and call occurrence witnesses capable of corroborating this account. Contrary to the majority's conclusion, defendant is not arguing that counsel had a duty to "interview every person who lives on the same block of the incident" but rather had a duty to conduct a "reasonable" investigation. Here, the record establishes that at least three State witnesses, Dominguez, Gonzalez, and Rios, were all located at the same apartment building from where Seija allegedly witnessed the attack. Arguably, the existence of these witnesses should have put counsel on notice of other potential eyewitnesses in that same building on the night of the beating. The fact that neither the State nor the State's witnesses alerted defense counsel to the existence of possible defense witnesses has no bearing whatsoever on whether counsel acted reasonably in failing to independently investigate his client's sole defense. More

importantly, at oral argument, the State conceded that counsel's investigation in the case at bar was at least arguably deficient.

¶ 43    I also find that defendant has established he was arguably prejudiced by counsel's deficient performance. While the majority is correct that this court previously found defendant's guilt was "overwhelmingly" established at trial, on direct appeal this court was reviewing a different claim and applying a different legal standard. On direct appeal, we found that any error in admitting Dominguez's prior consistent statement did not rise to the level of plain error. *Garcia*, 2020 IL App (1st) 170007-U, ¶ 70. By contrast, in the present case, defendant has asserted in a postconviction petition that his trial counsel was ineffective for failing to investigate and present an exculpatory eyewitness. At the first stage, he is required to show only that he was arguably prejudiced by counsel's failure to investigate. *Hodges*, 234 Ill. 2d at 17. Put another way, he is required to show only that there was arguably a reasonable probability that the outcome of the trial would have been different if counsel had investigated and presented Seija's testimony.

¶ 44    Thus, while I acknowledge our prior comment that the evidence against defendant was "overwhelming," we found so in the absence of any testimony from Seija. Had Seija been presented, the jury would have been free to consider the physical evidence alongside Seija's testimony and may have determined that the physical evidence was consistent with what Seija observed. Indeed, while much of the physical evidence placed defendant at the scene, it was not wholly inconsistent with his claim to police that he intervened in the beating to aid the victim, injuring himself in the process. In addition, certain elements of Seija's account corroborate the testimony of trial witness Silva that he observed two men, not three or more, attacking the victim. Therefore, it is at the very least arguable that the jury would have reached a different verdict if presented with a witness who corroborated defendant's initial statement to police by testifying that

she observed defendant interfere in the beating to stop it. Accordingly, I would find that defendant has established he was arguably prejudiced by his counsel's performance.

¶ 45    For the foregoing reasons, I must respectfully dissent.

---

***People v. Garcia*, 2022 IL App (1st) 210040**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 11-CR-07456; the Hon. Stanley J. Sacks, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Jonathan Yeasting, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brian K. Hodes, and Paul E. Wojcicki, Assistant State's Attorneys, of counsel), for the People. |

---