2024 IL App (1st) 201258-U
Order filed April 11, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-20-1258

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 99 CR 19701 |
| | ) | |
| JOSEPH TALACH, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court properly denied defendant's motion to file a third successive postconviction petition where he failed to raise a colorable claim of actual innocence based on newly discovered evidence.

¶ 2    Defendant Joseph Talach appeals from an order of the circuit court denying him leave to file a third successive *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, defendant contends that the circuit court erred in finding that his claim of actual innocence was barred by the doctrine of *res judicata*. He

argues that, although his current petition raises the same claim as a prior petition—that his codefendant was the actual assailant—this time, the claim was supported by the testimony of a newly discovered witness. For the reasons that follow, we affirm.

¶ 3    Defendant's conviction arose from the events of July 28, 1999. Shortly before 1 a.m. that day, Michael Rasor was struck multiple times in the head with a baseball bat. Defendant and a codefendant, Joseph Koonce, were arrested and charged by indictment with, *inter alia*, the attempted first degree murder of Rasor and the attempted first degree murder of Leonard Jagielski, a police officer who fell from defendant's and Koonce's moving car as they fled the scene. Following a 2001 joint jury trial, Koonce was acquitted and defendant was found guilty of the attempted first degree murder of Rasor. The trial court sentenced defendant to 30 years in prison. We set forth the underlying facts of the case in our order on direct appeal, affirming defendant's conviction. *People v. Talach*, No. 1-02-0177 (2004) (unpublished order under Illinois Supreme Court Rule 23). Due to the nature of defendant's current claim, we repeat portions of the trial evidence here.

¶ 4    The State's first two witnesses were Rasor, the victim, and Gilardo Arreola, one of his companions on the night in question. The record on appeal does not include the transcript of proceedings from the trial date when Rasor and Arreola testified. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (the appellant "has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error" and "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant"). While our review of the instant case is hindered by the absence of this transcript, it is not completely foreclosed, as we did recount the witnesses' testimony in our order on direct appeal. We quote that order here:

"At trial, Michael Rasor testified that he was riding in a car and drinking beer with three friends on the southwest side of Chicago when a blue car began to swerve in front of their car to block its path. Rasor also testified that the occupants of the car flashed gang signs at his vehicle. Rasor said that when the blue car stopped in front of their car at a stoplight, two men got out of the car; one of the men approached the passenger side of their vehicle, where he was seated in the rear, and began to smash the windows of the car with a baseball bat. Rasor testified that he got out of the car and began to run, and that his next memory was of waking up in a hospital. Rasor reported that he had suffered serious head injuries and that he had not fully recovered from their effects.

Gilardo Arreola testified that he had been riding in a white Pontiac and drinking beer with Rasor and two other friends when he saw a blue Chevrolet swerving to block their car from passing; Arreola also reported that the occupants of the blue car were flashing gang signs. According to Arreola, the blue car stopped in front of their car at a stoplight, and the blue car's driver then exited his vehicle and began punching the driver's side window of the Rasor-Arreola Pontiac with his hands. Arreola also saw a man exit the passenger side of the blue car with a baseball bat. Arreola identified the bat-wielding passenger of the blue car as [defendant] and the driver of the car as his codefendant, Koonce. Arreola saw [defendant] break the rear passenger window of the Pontiac with the bat. Arreola got out of his car, saw Rasor out of their car and fighting with Koonce, and was on his way to help Rasor when he saw [defendant] approach, swinging the bat. Arreola said that [defendant] grazed him with the bat, that he then ran, that he next saw Rasor in a sitting position on the sidewalk, and that he saw [defendant] hit Rasor with the bat, twice

in the head and once in the back. Arreola then noticed three Cook County sheriff's police officers on the scene and heard them order the combatants to 'freeze' and 'not to move.' He saw the officers approach the blue Chevrolet with [defendant] and Koonce inside the car, saw one officer reach into the car with the upper half of his body, saw the car drive off, and then saw the officer rolling on the street after the blue car drove away." *People v. Talach*, No. 1-02-0177 (2004) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5    Cook County sheriff's police officer Dimas Hernandez testified that he was off duty and pulling into the parking lot of a fast-food restaurant when he heard shouting and saw two cars, a blue Chevrolet and a white Pontiac, stopped about 50 feet away at a well-lit intersection. The two occupants of the blue car got out and approached the white car. The driver of the blue car struck and broke the driver's side window of the white car with his hand. The blue car's passenger, whom Hernandez identified as defendant in court, struck the white car with a baseball bat "numerous" times, breaking its sunroof.

¶ 6    Three men exited the white car. Defendant struck one of them twice in the upper body with the bat. The victim fell to the ground and lay motionless. Another man from the white car approached defendant, but backed off when defendant raised the bat again. Defendant then hit the victim who was motionless on the ground in the head with the bat. Hernandez ran toward the scene, announcing, "Police, freeze." At the same time, two marked sheriff's cars pulled up. Defendant and the other occupant of the blue car ran back to the blue car, and two sheriff's police officers chased them on foot. Later that morning, Hernandez identified defendant in a lineup. On cross-examination, Hernandez testified that he did not see anyone strike defendant during the incident.

¶ 7     Cook County sheriff's police officer Leonard Jagielski testified that he was riding in a marked car driven by his partner, Walter Malacina, when he noticed a "disturbance" in a group of "what appeared to be teenage people" at a well-lit intersection about a half a block away. One man, whom he identified in court as defendant, stood out because he was a little taller than most of the others around him. Defendant had a baseball bat raised above his head. Jagielski told Malacina to pull over, turned on his car's emergency lights, exited the car, and drew his gun. While about 15 to 20 feet from the group, he saw defendant using the bat to strike another individual who was on the ground. Specifically, defendant struck the victim in the head two times. A second man, whom Jagielski identified in court as Koonce, was kicking the victim in the head and shoulders.

¶ 8     Jagielski identified himself as a police officer and ordered defendant to drop the bat, but defendant did not comply. Instead, he and Koonce turned and walked into the street. While passing a white car parked in the center lane, defendant struck it with the bat and broke a window on its passenger side. Defendant and Koonce then got into a blue car that was in front of the white car. Jagielski and Malacina followed on foot. Malacina demanded that defendant and Koonce exit the blue car. Jagielski reached through the open passenger window and tried to remove the car's keys from its ignition. As he attempted to do so, he exchanged several punches with defendant, who was in the car's passenger seat. Defendant's face was only inches from Jagielski's during the struggle. Koonce looked directly at Jagielski, started the car, and began to drive off. Jagielski's feet were on the ground, but his upper body was inside the blue car. Defendant pushed Jagielski back until Jagielski lost his grip and fell out of the car. He rolled on the street eight to ten times, and then signaled to a second sheriff's police car, driven by Ernest Solideo, to pursue the escaping

- 5 -

blue car. After receiving treatment for minor injuries, Jagielski identified defendant and Koonce in a lineup later that morning.

¶ 9   Jagielski's partner, Walter Malacina, testified and gave a narrative account of the incident which corroborated Jagielski's description of their attempts to detain the two suspects, the suspects' fleeing to the blue car, the suspects' struggle with Jagielski, and Jagielski's fall from the moving car. Malacina did not identify either suspect. Though Malacina saw Rasor on the ground, he did not see the attack which caused his injuries.

¶ 10   Ernest Solideo, another county police officer, testified that when Malacina's patrol car turned on its emergency lights and stopped in front of him, he activated his own car's lights and stopped as well. He saw Jagielski and Malacina exit their car, and he saw a man with a baseball bat smash the window of a white car that was parked in front of Malacina's car. The bat-wielder and another man got into a blue car that was in front of the white car. As Jagielski and Malacina tried to pull the passenger from the car, Solideo ran back to his own car to pursue the blue car and radio headquarters. He saw Jagielski fall from the moving blue car and roll several times. After stopping to check on Jagielski's condition, he pursued the blue car for a few blocks. When it parked, he was able to see the face of the driver, whom he identified in court as Koonce. Koonce and his passenger fled on foot. Later that morning, Solideo identified Koonce in a lineup.

¶ 11   Two Chicago police department officers testified to the circumstances of the separate apprehensions of defendant and Koonce shortly after they abandoned the blue car. The jury also heard testimony of the Chicago police department evidence technician who examined the scene and both cars, the city police detective who conducted the lineups, and Rasor's treating physician, who recounted the severity of his skull fracture and other injuries.

¶ 12    Defendant called Karen Kooi, an Illinois State Police forensic scientist whom the court declared an expert witness in DNA testing. Kooi testified that she tested 10 "exhibits" connected with defendant's and Koonce's case. Relevant here, the DNA profile she generated from her testing of three separate blood stains found on a baseball bat recovered from the blue car matched defendant's DNA, but not Koonce's or Rasor's DNA. On cross-examination, Kooi specified that two of the blood stains were "near the handle of the bat" and the third was "from about the middle of the bat."

¶ 13    Defendant testified that on the night of the incident, he was driving his own car, with Koonce as his passenger. Around 12:40 a.m., he noticed he was being followed by a white car. When he stopped at a red light, the white car struck the back of his car. Defendant got out of his car, walked to its rear to check for damage, and asked the driver of the white car for an explanation of the accident. The driver got out and yelled a gang identification at him. Another man exited the white car with a baseball bat and approached him, swinging the bat. Two more men got out of the back seat with beer bottles. All of the men were yelling gang identifications.

¶ 14    The driver punched defendant in the face. The other men threw their beer bottles at him. Defendant tried to get back to his own car, but the man with the baseball bat came at him, swinging it and threatening to kill him. The bat hit defendant's shoulder and "slipped up" to hit him in the head. According to defendant, all of the men from the white car were drunk and one of the two men who had approached him with beer bottles was disoriented, tripping and falling, and "kind of staggering." Defendant later learned this man was Rasor.

¶ 15    The man with the bat swung it at defendant and missed. Defendant heard a thud and then saw Rasor on the ground. The man with the bat froze. Defendant grabbed the bat from him and

started toward his own car. However, three men were coming at him with beer bottles, so he hit the white car with the bat twice, as a show of force to "keep them away."

¶ 16    At this point, defendant saw Koonce on the ground. Still holding the bat, he picked Koonce up and told him they had to go. They entered the blue car from the passenger side. Koonce slid over and began to drive while more beer bottles were being thrown at them. As they were driving away, a man ran alongside the car and "jumped in *** from the waist up." The man was yelling and then fell out of the car. Defendant did not know the man was a police officer.

¶ 17    On cross-examination, defendant stated that he did not see any police cars or officers at the scene and did not see any police cars following him and Koonce as they drove away. He denied that the man who jumped in his car had identified himself as an officer. He also denied punching the man or being punched by him.

¶ 18    At the close of the evidence, the trial court directed verdicts in favor of both defendants on the charges of attempted murder of Jagielski. The charges of attempted murder of Rasor were submitted to the jury, which returned a not guilty verdict for Koonce, and a guilty verdict for defendant. However, when the clerk read this verdict aloud, he mistakenly read it as "guilty of first degree murder." The trial court polled the jurors and they all acknowledged that this was their verdict. After the trial court discharged the jury, defense counsel moved to set aside the verdict on the grounds that the jury was polled on an offense that was not charged. The trial court recalled the jurors into the courtroom, explained the clerk's error, informed them they were still under oath, and re-polled them as to the verdict of attempted first degree murder. Every juror confirmed that they had found defendant guilty of attempted first degree murder.

¶ 19 The trial court subsequently denied defendant's motion for a new trial, which included an argument as to the polling of the jury, and sentenced defendant to 30 years in prison.

¶ 20 On direct appeal, defendant argued that (1) the trial court erred by failing to conduct a hearing on the State's reasons for its preemptory challenges and by limiting cross-examination of the State's witnesses; (2) the State made inflammatory remarks during closing arguments; (3) the State failed to prove him guilty beyond a reasonable doubt; and (4) his sentence was excessive. We affirmed defendant's conviction and sentence. *People v. Talach*, No. 1-02-0177 (2004) (unpublished order under Illinois Supreme Court Rule 23).

¶ 21 On January 26, 2005, defendant filed a *pro se* petition for postconviction relief under the Act. In the petition, he argued that (1) his right to due process was violated when the court re-polled the jury after the clerk mistakenly read the verdict; (2) he received ineffective assistance of trial counsel; and (3) he received ineffective assistance of appellate counsel. The circuit court dismissed the petition as frivolous and patently without merit. We affirmed. *People v. Talach*, No. 1-05-1667 (2006) (unpublished order under Illinois Supreme Court Rule 23).

¶ 22 On May 19, 2009, defendant filed a *pro se* motion for leave to file a successive postconviction petition, arguing that newly discovered evidence established he was actually innocent of attempted first-degree murder. Defendant principally relied on affidavits from Carlos Nunez and Jacqueline Talach. Nunez was a fellow inmate who attested he witnessed the incident and saw Koonce, not defendant, strike Rasor with the bat. Jacqueline, defendant's sister and Koonce's fiancée, attested that Koonce confessed to her in 2002, shortly before his death, that it was he and not defendant who hit Rasor with the bat. Defendant also provided his own affidavit

attesting that Koonce hit Rasor with the bat to defend defendant from being hit with a beer bottle. The circuit court denied defendant leave to file the successive petition.

¶ 23 We affirmed, finding that Nunez's and Jacqueline's affidavits did not constitute newly discovered evidence because defendant was aware of the asserted facts prior to and during his trial. We also found that the facts contained in the affidavits were not of such a conclusive character that they would change the result if defendant were retried. Rather, a retrial would merely require the fact finder to determine which competing version of events and which witnesses were most credible. *People v. Talach*, No. 1-09-1949 (2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 24 On December 14, 2015, defendant, through counsel, filed a motion for leave to file a second successive petition. In the petition, he argued that his conviction was void because the circuit court had no jurisdiction to reconvene the jury after it had been discharged following the clerk's incorrect reading of the verdict. The circuit court denied leave to file, finding that defendant's argument was barred by the doctrine of *res judicata* because he had already raised this issue in his initial postconviction petition. We affirmed. *People v. Talach*, 2018 IL App (1st) 161209-U.

¶ 25 On January 27, 2020, defendant, through counsel, filed a motion for leave to file the successive petition at issue in this appeal, his third. In the motion, he made a claim of actual innocence based on an affidavit from Kimberly Johns, the sister of defendant's deceased codefendant, Koonce.[1] In relevant part, Johns stated as follows:

---

[1] The affidavit is not included in the record on appeal, but is quoted at length in defendant's motion and in part in the circuit court's order denying leave to file. Again, we note that it is defendant's burden, as the appellant, to present a sufficiently complete record on appeal, and that any doubts arising from the incompleteness of the record will be resolved against him. *Foutch*, 99 Ill. 2d at 391-92. We quote the affidavit as it was set forth in defendant's motion.

"After the verdict was in my brother was found not guilty and was able to come home. [Defendant] was convicted.

My brother Joseph Koonce came to stay with me after he got out he told me what happened that night. *** My brother said that there were four guys that got out of the other car with bottles and bat. They were throwing bottles at [defendant's] car and running towards them to try to hit them with the bat. My brother said that's [*sic*] the one guy ran up to him with the bat and hit him with the bat and that he took the bat away and started hitting the guy back with the bat as the other guys were fighting with [defendant] and throwing bottles at the car, hitting [defendant's] car. They jumped back in the car and my brother was yelling 'go Joey go, they're coming they're coming.' And the next thing he knew cops were everywhere and they went to jail."

Johns further stated that a "couple" of years later, Koonce died. She concluded, "I was unwilling to tell anyone what my brother told me before he died until now."

¶ 26 Defendant asserted that Johns's testimony as to what Koonce said to her constituted evidence which was unavailable at trial and could not have been discovered by the exercise of due diligence. He argued that Koonce was unavailable as a witness at trial since, as a codefendant, he had a fifth-amendment right against self-incrimination. Defendant maintained that he had no way of knowing of Koonce's statements to Johns because Johns was not willing to come forward until she executed her affidavit. He further argued that Johns's affidavit exculpated him and supported his defense, as it established that he acted in self-defense and that it was Koonce, not himself, who wielded the bat. Finally, he asserted that Koonce's statements were admissible as statements against penal interest.

¶ 27 On October 2, 2020, the circuit court denied leave to file. The court concluded that defendant's claim was barred by the doctrine of *res judicata*, as the allegations contained in Johns's affidavit were not materially different from the allegations in the affidavits defendant filed in support of his 2009 petition. Specifically, the circuit court found that "the import of Johns' allegations is exactly the same as those of Carlos Nunez and Jacqueline Talach—that Koonce, not [defendant], struck Rasor with the bat and Koonce admitted as such after the trial." Noting that the appellate court had already decided those allegations did not qualify as newly discovered or as being of such conclusive character to change the result on retrial, the court concluded that defendant's claim amounted "to no more than rephrasing (if not merely repeating) a claim the circuit and appellate courts already rejected" and that "[t]he Act simply does not allow petitioners to make an end run around *res judicata* in this manner." Further, the circuit court found that, because defendant would have been aware of the facts alleged in Johns's affidavit before and during his trial, her affidavit did not qualify as newly discovered evidence.

¶ 28 Defendant filed a timely notice of appeal.

¶ 29 On appeal, defendant contends that leave to file his successive postconviction petition should have been granted.

¶ 30 The Act provides a statutory remedy to criminal defendants who assert that substantial violations of their constitutional rights occurred at trial. *People v. Robinson*, 2020 IL 123849, ¶ 42. A postconviction proceeding is not a substitute for a direct appeal; rather, it affords a mechanism for collateral attack on a final judgment. *Id.* Accordingly, issues that were actually decided on direct appeal are barred by the doctrine of *res judicata* and issues that could have been

raised, but were not, are barred by the doctrine of forfeiture. *People v. Beard*, 2023 IL App (1st) 200106, ¶ 36 (citing *People v. Blair*, 215 Ill. 2d 427, 442 (2005)).

¶ 31    The Act contemplates the filing of only one postconviction petition. *Robinson*, 2020 IL 123849, ¶ 42. However, our supreme court has provided two bases upon which the bar against successive proceedings may be relaxed. *Id.* The first basis is when a defendant establishes "cause and prejudice" for failing to raise the claim earlier. *Id.* The second is the "fundamental miscarriage of justice" exception, under which the defendant must show actual innocence. *Id.* When a defendant claims actual innocence, the question is whether his petition and supporting documentation set forth a colorable claim; that is, whether they raise the probability that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. *People v. Edwards*, 2012 IL 111711, ¶¶ 24, 31, 33. The evidence supporting the claim of actual innocence must be (1) newly discovered; (2) material and not merely cumulative; and (3) of such conclusive character that it would probably change the result on retrial. *Id.* ¶ 32. The conclusiveness of the evidence is the most important element of an actual innocence claim. *Robinson*, 2020 IL 123849, ¶ 47. We review the denial of leave to file a successive postconviction petition *de novo*. *Id.* ¶¶ 39, 40.

¶ 32    Defendant argues that the circuit court erred in finding his claim of actual innocence was barred by the doctrine of *res judicata*. He maintains that, although his current petition raises the same claim as a prior petition—that his codefendant was the actual assailant—the claim is not barred by *res judicata* because, this time, it is supported by the testimony of a newly discovered witness. Relying on *People v. Ortiz*, 235 Ill. 2d 319 (2009), defendant asserts that "claims of actual innocence may not [be] denied on the basis of *res judicata* where new evidence is produced that

- 13 -

was not available at the time of the filing even where the underlying claim of innocence is materially identical" to a prior claim.

¶ 33    As noted above, the doctrine of *res judicata* bars consideration in postconviction proceedings of issues that were decided on direct appeal. *Beard*, 2023 IL App (1st) 200106, ¶ 36. However, our supreme court held in *Ortiz* that preclusion doctrines such as *res judicata* do not bar "multiple claims of actual innocence where each claim is supported by newly discovered evidence." *Id.* at 333. Thus, our supreme court found that the successive petition at issue in *Ortiz* was not precluded where, "although [the] defendant's first two petitions also alleged actual innocence, [the] defendant's third petition presented a new 'claim' of actual innocence because it offered two additional eyewitnesses who were previously unknown to [the] defendant." *Id.*

¶ 34    Accordingly, the applicability of *res judicata* in this case turns on whether Johns's affidavit was "newly discovered evidence." *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 51. In *Ortiz*, our supreme court stated that newly discovered evidence is "defined as evidence that has been discovered since the trial and that the defendant could not have discovered sooner through due diligence." *Ortiz*, 235 Ill. 2d at 334; *Beard*, 2023 IL App (1st) 200106, ¶¶ 43, 49. Statements of codefendants are considered newly discovered because no amount of diligence could have forced them to testify. *Beard*, 2023 IL App (1st) 200106, ¶ 50.

¶ 35    Here, taking Johns's averments as true, which we must at this stage (*Wideman*, 2016 IL App (1st) 123092, ¶ 59), the information contained in her affidavit was unknown to her until after defendant's and Koonce's joint jury trial, when Koonce came to stay with her. This court has found that, for purposes of *res judicata*, an affidavit attached to a successive petition in which the affiant reports what a codefendant conveyed to her after trial constitutes newly discovered evidence.

- 14 -

*Beard*, 2023 IL App (1st) 200106, ¶ 50. This is the situation in the instant case. As such, we find that consideration of defendant's successive postconviction claim based on Johns's affidavit is not barred by *res judicata*. *See id.*

¶ 36    Defendant next argues that the circuit court erred in rejecting his claim of actual innocence based on a finding that Johns's affidavit did not qualify as "newly discovered" where defendant already knew Koonce was the assailant and only the source of that information—Koonce's statements to his sister and his sister herself—was unknown or unavailable. Relying on *People v. Molstad*, 101 Ill. 2d 128 (1984), defendant asserts that courts may entertain claims of actual innocence where it is the source of the claim, rather than the claim itself, which is newly discovered.

¶ 37    However, because our review of the denial of leave to file a successive postconviction petition is *de novo* (*Robinson*, 2020 IL 123849, ¶¶ 39, 40), we are not constrained to the reasoning given by the circuit court for its decision. We affirm the circuit court's rejection of the actual innocence claim on a different basis.

¶ 38    As explained above, evidence supporting a postconviction claim of actual innocence must be (1) newly discovered; (2) material and not merely cumulative; and (3) of such conclusive character that it would probably change the result on retrial. *Edwards*, 2012 IL 111711, ¶ 32. Of these elements, the conclusiveness of the evidence is the most important. *Robinson*, 2020 IL 123849, ¶ 47. In fact, a reviewing court "need not address whether [a] petitioner's new evidence could have been discovered earlier in the exercise of due diligence" or "whether it is material and not merely cumulative" if the court concludes "that, even assuming these conditions have been satisfied, the evidence is not of such conclusive character that it would probably change the result

- 15 -

on retrial." *People v. Sanders*, 2016 IL 118123, ¶ 47. Accordingly, we turn our attention to the question of the conclusiveness of Johns's affidavit.

¶ 39 In *Robinson*, our supreme court explained that, when contemplating conclusiveness, "the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Robinson*, 2020 IL 123849, ¶ 48. The new evidence is not required to be entirely dispositive or exonerating in order to be likely to alter the result on retrial. *Id.* ¶¶ 48, 55, 56. Moreover, at the leave-to-file stage of postconviction proceedings, it is presumed that the new evidence will contradict the evidence of the defendant's guilt at trial. *Id.* ¶ 57. As such, the question is not whether the new evidence is inconsistent or in conflict with the trial evidence, but whether it is "positively rebutted" by the trial record. See *id.* ¶ 60.

¶ 40 Evidence is "positively rebutted" when it is "clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible." *Robinson*, 2020 IL 123849, ¶ 60. As an example of false or impossible, the *Robinson* court pointed to a case where an assertion that the victim had been shot only once was positively rebutted by autopsy evidence at trial establishing that the victim had been shot twice and died of multiple gunshot wounds. *Id.* ¶ 59 (discussing *Sanders*, 2016 IL 118123, ¶ 48).

¶ 41 Here, we find that Johns's affidavit was not so conclusive as to change the result at a retrial because it is positively rebutted by the record. According to Johns, Koonce told her "one guy ran up to him with the bat and hit him with the bat and that he took the bat away and started hitting the guy back with the bat as the other guys were fighting with [defendant] and throwing bottles at the

- 16 -

car, hitting [defendant's] car." Koonce further related that he and defendant then "jumped back in the car ***[a]nd the next thing he knew cops were everywhere and they went to jail."

¶ 42 However, the evidence at trial established that the DNA profile obtained from blood on the handle and the middle of the bat matched defendant's DNA and did not match Koonce's DNA. Given this forensic evidence, the new version of events being offered in Johns's affidavit is affirmatively and incontestably demonstrated to be false or impossible. See *Robinson*, 2020 IL 123849, ¶ 60. Where defendant's DNA was found on the bat, no fact finder could ever accept the truth of Johns's assertion that it was Koonce, and only Koonce, who took the bat from an attacker and then beat Rasor with it. Therefore, we find that the DNA evidence affirmatively rebuts the statements in Johns's affidavit, similar to the way autopsy evidence would. See *id.* ¶¶ 59, 60; *People v. Massey*, 2023 IL App (1st) 220123, ¶ 30 (surveillance videos affirmatively rebutted newly discovered statements); *People v. Garcia*, 2022 IL App (1st) 210040, ¶ 36 (forensic evidence, including the victim's blood on the defendant's shoe and the defendant's shoe impressions on the victim's shirt, explicitly contradicted newly discovered affidavit).

¶ 43 Moreover, we note that the *Robinson* court, in concluding that the defendant presented an arguable claim of actual innocence, relied not only on the fact that "no physical or forensic evidence linked [him] to the crimes," but also on the circumstances that no eyewitnesses identified him "as being involved or even present at the time of the relevant events," and that the only evidence supporting his guilt was his own confession and testimony that he had confessed to others. *Robinson*, 2020 IL 123849, ¶ 82.

¶ 44 Here, in contrast to *Robinson*, not only did forensic evidence implicate defendant, but, in addition, three eyewitnesses identified him as the person who hit Rasor with the bat: Arreola,

Hernandez, and Jagielski. Thus, the evidence at trial was not tenuous, as it had been in *Robinson*. See *Garcia*, 2022 IL App (1st) 210040, ¶ 36 (distinguishing *Robinson* where the physical evidence corroborated the trial testimony of two eyewitnesses who saw the defendant attack the victim); *People v. Sibley*, 2022 IL App (4th) 190915-U, ¶ 54 (distinguishing *Robinson* where spent casings and a live round recovered at the scene corroborated the defendant's confession and where the defendant identified himself as the man in a photograph that an eyewitness took of the shooter); *People v. Thompson*, 2021 IL App (4th) 200237-U, ¶ 27 (distinguishing *Robinson* where the State presented multiple eyewitnesses who observed the defendant shoot the victim and where a gun was recovered next to the defendant); *People v. Rudolph*, 2021 IL App (1st) 191146-U, ¶ 30 (distinguishing *Robinson* where three eyewitnesses identified the defendant as a shooter); *People v. Fenton*, 2021 IL App (1st) 171483-U, ¶¶ 44-45 (distinguishing *Robinson* where three eyewitnesses testified at trial that the defendant had a gun on the night of the shooting); see also Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered on or after January 1, 2021, may be cited for persuasive purposes).

¶ 45    In this case, the version of events set forth in Johns's affidavit is positively rebutted by the record. As such, the affidavit does not significantly advance defendant's claim of actual innocence by placing the trial evidence in a different light and undermining the court's confidence in the judgment of guilt. See *Robinson*, 2020 IL 123849, ¶ 48. That is, the newly discovered evidence is not of such conclusive character that it would probably change the result on retrial. See *Edwards*, 2012 IL 111711, ¶ 32. Accordingly, we find that defendant failed to state a colorable claim of actual innocence and the circuit court properly denied leave to file his successive postconviction petition.

¶ 46    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 47    Affirmed.