2024 IL App (1st) 220911-U

SECOND DIVISION
August 20, 2024

No. 1-22-0911

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County. |
| Respondent-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 05 CR 15726 |
| | ) | |
| | ) | |
| JAMES SAMUELS, | ) | |
| | ) | Honorable |
| | ) | Carol M. Howard, |
| Petitioner-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the trial court's order dismissing defendant's postconviction petition. Defendant fails to overcome the presumption that he received reasonable assistance from postconviction counsel where defendant's *pro se* postconviction petition adequately stated his constitutional claim.

¶ 2    Defendant James Samuels was charged with murder and concealing a homicide after strangling his girlfriend to death and concealing her body by placing it in the trunk of his car. After a bench trial, he was convicted of first-degree murder and concealing a homicidal death.

¶ 3    After filing an unsuccessful appeal of his conviction and sentence, defendant filed a *pro se* postconviction petition. Defendant made two claims in his *pro se* petition: (1) defendant alleged trial counsel provided ineffective assistance by failing to investigate and present facts and expert opinion about defendant's mental illness and that appellate counsel should have raised this issue on direct appeal; and (2) defendant alleged his trial counsel provided ineffective assistance by failing to object when the trial judge improperly considered in aggravation that defendant killed the victim out of rage and/or jealousy and refused to consider defendant's mental illness and prospects for rehabilitation. The trial court dismissed those *pro se* claims at the second stage of the postconviction process.

¶ 4    In this appeal, defendant raises only one issue. He argues for the first time that he did not receive adequate legal assistance from his appointed postconviction counsel. Defendant contends that his postconviction counsel should have assisted him with amending his *pro se* sentencing claim as he argues was necessary for an adequate presentation of his contentions. For the following reasons, we affirm.

¶ 5                              BACKGROUND[1]

¶ 6    On June 12, 2005, defendant killed his girlfriend, Shanelle Williams, by strangulation. When Williams informed defendant she wanted to break up with him, they had a fight that culminated in defendant killing her. Defendant then drove to a friend's house. The friend,

---

[1] The facts of the underlying case are set forth more fully in our order disposing of defendant's direct appeal. See *People v. Samuels*, 2011 IL App (1st) 092115-U (unpublished order under Rule 23, Sept. 9, 2011). We do not recite all of the facts here and instead focus on the facts pertinent to the postconviction petition that is at issue in this appeal.

William Gore, testified at trial. Gore told the trial court that defendant confessed to him that he had killed Williams. After telling Gore about the homicide, defendant showed Williams' dead body to Gore, which was in the trunk of defendant's car. Gore called the police which resulted in defendant being arrested and charged with first-degree murder and concealment of homicidal death.

¶ 7    When defendant was being questioned by the police, he gave several statements that implicated him in the homicide. Defendant told detectives that he was sitting in a parked car with Williams when she told him that she wanted to break up with him because he could not control his temper. They began driving around the neighborhood and, according to defendant, at some point his anger overcame him. Defendant grabbed the steering wheel and forced the car into park. Defendant told the detectives that, at the point he got the car into park, "he had blacked out, which he often did according to him from when he had anger bouts." Defendant told the detectives later during the interrogation that "he didn't remember [killing Williams] because he had blacked out, and he came to the realization of what was going on when he left, when he was putting her body into the trunk." Defendant was not entirely consistent about the time he "came to" from his alleged blackout, but his version of the events always remained that he blacked out and did not remember killing Williams.

¶ 8    The detective who testified at trial stated that defendant's demeanor during the interrogation was "remorseful, and he was very sorry for what he had done." Defendant repeated the same set of facts as set forth above including the same explanations for his actions when he spoke to an Assistant State's Attorney. The above testimony, along with other evidence, was admitted at defendant's bench trial. After hearing all the evidence, the trial court found defendant

guilty of first-degree murder and also guilty of concealment of a homicidal death. Defendant was sentenced to an aggregate term of 34 years in prison for the two offenses.

¶ 9     During the sentencing hearing, the trial court indicated that it considered the statutory factors in aggravation and mitigation, that it considered the arguments of counsel, that it reviewed the victim impact statements and the pre-sentence investigation, and that it was well aware of the facts in this case. The court also noted that it was aware of defendant's previous felony conviction. The trial court went on to express the difficulty of fashioning a sentence and weighing all the considerations that need to be weighed during sentencing.

¶ 10    The trial court addressed defendant's troubled childhood and explained that both the victim and defendant had many people in the courtroom who loved them. The trial court then stated that "this is a crime where Defendant killed the victim in this matter out of rage and/or jealousy." The trial court explained that "Ms. Williams apparently was about to break off the relationship, and the Defendant would have nothing to do with that." The trial court stated that, not only did defendant kill Williams, but he also was actively involved in hiding her body and was arrested with Williams' lifeless body in the trunk of his car. The trial court noted that it was taking all the matters into consideration—aggravation and mitigation as well as the facts of the case— and it sentenced defendant to 30 years in prison for first-degree murder with an additional sentence of 4 years in prison for concealing a homicidal death. The sentences are to be served consecutively.

¶ 11    Defendant filed a direct appeal from his conviction. On appeal, he argued that the trial court should have ordered a fitness evaluation on its own initiative and, additionally, that his trial counsel was ineffective for failing to order a fitness evaluation. This court found that there was nothing in the record to indicate that defendant lacked the requisite fitness to stand trial and,

accordingly, we affirmed. *People v. Samuels*, 2011 IL App (1st) 092115-U (unpublished order under Rule 23, Sept. 9, 2011).

¶ 12    Defendant filed a *pro se* postconviction petition on July 17, 2013. In his petition, defendant claimed that his trial counsel provided ineffective assistance by failing to adequately apprise the court of his mental illness. Defendant argued that, similarly, appellate counsel should have raised the issue on direct appeal. Defendant also claimed in his *pro se* petition that his trial counsel was ineffective for failing to object during sentencing when the trial judge considered that defendant killed Williams out of rage and/or jealousy as an aggravating factor, and where the trial court did not adequately consider his mental illness and potential for rehabilitation. Defendant argued that, similarly, appellate counsel should have raised the issue on appeal.

¶ 13    Defendant attached to his *pro se* postconviction petition records of his history of mental illness and his history of problems with his anger, which were not presented at trial. The records demonstrate defendant had a long history of mental illness dating back to his childhood, and also demonstrate that he experienced blackouts when he got angry, even while he was a minor.

¶ 14    One record attached to defendant's *pro se* petition is a discharge form from Grant Hospital of Chicago dated November 9, 1993. Defendant was 11 years old at the time. The doctor who completed the form indicated that defendant "appeared angry, sad, and hopeless." The doctor explained that defendant was continually getting into fights and having other behavioral problems. Defendant was diagnosed at that time as having adjustment disorder with mixed disturbance of emotions and conduct.

¶ 15    Another record attached to defendant's *pro se* petition is a psychological evaluation authored by a clinical psychologist at the Indian Oaks Academy, Judith Hinga. The evaluation states that defendant was admitted to Indian Oaks in October 1995 when he was 13 years old.

This evaluation was done when defendant was 15. It explains that defendant was taken into DCFS custody in 1992 because of his mother's substance abuse problems. Defendant had been through various placements in the mental health system by the time of this psychological evaluation. The evaluation contains numerous references to defendant's problems with anger and how it leads him to physical violence. Hinga noted that defendant is "angry with a proclivity towards violence." The evaluation paints a pretty grim picture of the likelihood of success in treating his mental illness insofar as it concerns his anger and penchant for violence, with Hinga noting that "it is unlikely that [defendant] will abandon his angry stance."

¶ 16     Another record attached to defendant's petition is a screening and referral form from the Illinois Department of Health completed when defendant was 17 years old. The screener for the Department, Darren York, filled out the screening form after a face-to-face meeting with defendant. The interview was four and a half years before defendant killed Williams.

¶ 17     York noted that, at the time of the interview, defendant "denied homicidal ideation but reported if angry he did not know what would happen." Defendant further "reported he might not know what was happening if he lost control of his anger." In a space on the screening form for comments from the screener, which is marked optional, York wrote that defendant reported his anger was getting out of control and defendant acknowledged he needed professional help. York wrote that defendant "stated he cannot see or hear when he gets angry and he cannot control what happens when he gets angry." Defendant could not assure York that he would not hurt himself or others. In another area of the form, York noted that defendant "reported he cannot control his anger." York further noted that defendant "reported he does not see, hear, or say anything when he is angry and cannot see, hear, or say anything until [the] anger passes."

6

¶ 18    York explained that defendant "reported he 'blacks out' and isn't aware of his bx (behavior)" during such spells of anger. York wrote that staff members reported that, when defendant got angry, defendant "appears to dissociate and not be aware of his [behavior] or actions" and that defendant "does not respond to verbal/physical intervention when he is in an angry dissociative state." Defendant had made verbal threats of physical aggression to staff and peers at the mental health center. York wrote that defendant had become physically aggressive toward female staff within the 72-hour period preceding the interview. In response to the final prompt in the screening form, York reported that defendant "denied suicidal/homicidal ideation, but could not assure interviewer he would not harm self or others, if angry and 'out of control.' "

¶ 19    Defendant also attached to his *pro se* petition his own affidavit in which he avers that he has bipolar disorder and paranoid schizophrenia. Defendant averred in his affidavit that he was being treated for those mental illnesses while in prison and that he had been hospitalized in the mental health ward on several occasions. Defendant had reportedly also attempted suicide four times.

¶ 20    The trial court summarily dismissed defendant's *pro se* postconviction petition at the first stage, but it did so after the 90-day deadline for ruling on a postconviction petition. Defendant appealed the summary dismissal of his postconviction petition, and the State agreed with defendant that the trial court erred when it dismissed his petition at the first stage after the statutory deadline had passed. By agreement of the parties, the case was summarily remanded to the trial court for second-stage postconviction proceedings on defendant's petition. *People v. Samuels*, 2015 IL App (1st) 141264-U (June 23, 2015). On remand, postconviction counsel was appointed to assist defendant with his claims.

¶ 21    Due to delays in securing defendant's medical records and litigating the previous dismissal of the postconviction petition which was reversed on appeal, five years elapsed from the time defendant's postconviction petition was initially filed before it came up for a hearing. Postconviction counsel filed a supplemental petition on his behalf. Postconviction counsel also filed a certificate under Illinois Supreme Court Rule 651(c) averring that defendant's claims were now adequately presented to the court. In the supplemental petition, postconviction counsel added a claim arguing that trial counsel was ineffective for failing to adequately advise defendant about the viability of a second-degree murder defense, which allegedly caused defendant to reject a 20-year plea deal that was offered by the State. Postconviction counsel did not amend or supplement defendant's original *pro se* postconviction claims, but instead stood on the claims as they were asserted by defendant. In response to a motion for clarification filed by the State, postconviction counsel filed an amended supplemental petition to assert the new, second-degree murder claim more clearly.

¶ 22    The State filed a motion to dismiss defendant's supplemental postconviction petition. The State argued that the ineffective assistance claim premised on counsel's failure to advise defendant that second-degree murder was not a viable verdict was "waived because it was raised on direct appeal." The State also argued the claim based on counsel's failure to investigate defendant's mental illness was *res judicata* because it was litigated in the context of the direct appeal argument that counsel failed to request a fitness hearing. Finally, the State argued there is no merit to the claims of ineffective assistance arising from the court's alleged improper consideration of aggravation at sentencing.

¶ 23    In response to the motion to dismiss, postconviction counsel filed an addendum to the amended supplemental petition. Postconviction counsel also filed a written response to the

motion to dismiss, only substantially arguing against the dismissal of the new claim counsel added into the postconviction proceedings. As to the claims made by defendant in his original *pro se* postconviction petition, counsel stated that defendant "relies on the arguments made in the petition."

¶ 24    The trial court held a hearing on the motion to dismiss. At the hearing, postconviction counsel did not argue the claims defendant alleged in his original *pro se* petition but instead informed the trial court at the hearing, "[a]s to his *pro se* claims, we are resting on his petition, on his *pro se* petition. I have no further argument. I will rest on whatever arguments were in the *pro se* petition." Counsel proceeded to argue the merits of the supplemental claim she added. At the conclusion of the hearing, the trial court dismissed the two claims defendant made in his original petition. The trial court found that the claims defendant raised in his *pro se* petition were barred by *res judicata* and otherwise lacked merit. The trial court, however, advanced defendant's petition to the third stage for an evidentiary hearing on the supplemental claim. After a third-stage evidentiary hearing on defendant's supplemental postconviction claim, the trial court rejected the last of defendant's postconviction claims, fully disposing of these postconviction proceedings. Defendant timely appealed.

¶ 25                                ANALYSIS

¶ 26    The only issue defendant raises on appeal is that his postconviction counsel was ineffective for failing to amend his *pro se* petition in order to advance his claim that both trial and appellate counsel should have presented the issue of his mental illness as mitigation during sentencing and in his direct appeal. Defendant did not raise the issue of ineffective assistance of postconviction counsel in the trial court. Indeed, it would be unusual for postconviction counsel to amend a petition to allege he or she was deficient. Ordinarily, claims not raised in a

postconviction petition are forfeited. See *People v. Garcia*, 2022 IL App (1st) 210040, ¶ 31

(quoting 725 ILCS 5/122-3 (West 2018) ("[a]ny claim of substantial denial of constitutional

rights not raised in the original or an amended petition is waived."). However, a defendant is

permitted to raise a claim for unreasonable assistance of postconviction counsel for the first time

on appeal. *People v. Johnson*, 2018 IL 122227, ¶ 22. "It is settled that a defendant may allege on

appeal from the denial of postconviction relief at the second or third stage that his postconviction

counsel provided unreasonable assistance." *Id.*; see also, *e.g.*, *People v. Turner*, 187 Ill. 2d 406,

409-10 (1999); *People v. Guest*, 166 Ill. 2d 381, 412-13 (1995); *People v. Groszek*, 2016 IL App

(3d) 140455, ¶ 15. We conclude we are authorized to hear this claim.

¶ 27    Defendant argues that he made the subject mental illness claims in his *pro se*

postconviction petition but that they were not developed by his appointed counsel so that his

alleged constitutional violations were adequately presented to the court. Defendant asks that we

reverse the trial court's second-stage dismissal of his sentencing claim and remand the case for

further postconviction proceedings.

¶ 28    The Postconviction Hearing Act (725 ILCS 5/122–1 *et seq.*) provides a process by which

a criminal defendant may challenge his or her conviction or sentence by filing a petition for relief

in the circuit court. 725 ILCS 5/122-1 (West 2022). The Post-Conviction Hearing Act is a

statutory creation, not a constitutional one. *People v. Bailey*, 2017 IL 121450, ¶ 17. Our supreme

court has explained that, "[i]n a postconviction proceeding, there is no constitutional right to the

assistance of counsel" and, instead, therefore, "the right to counsel is a matter of 'legislative

grace' " in a postconviction proceeding. *People v. Addison*, 2023 IL 127119, ¶ 19. As such, a

postconviction petitioner is entitled only to the level of assistance required by the Post-

Conviction Hearing Act, and the claims are not adjudicated under the standards applicable to

Sixth Amendment ineffective assistance of counsel claims. *People v. Custer*, 2019 IL 123339, ¶ 30.

¶ 29 Under the Post-Conviction Hearing Act, a petitioner is entitled to a "reasonable level of assistance" from counsel. *Id*. The "reasonable level of assistance" afforded to petitioners under the Act is less than that afforded by the federal and state constitutions. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). The reasonable assistance standard is governed by Section 122-4 of the Code of Criminal Procedure and Illinois Supreme Court Rule 651. *People v. Owens*, 139 Ill. 2d 351, 359 (1990).

¶ 30 Postconviction counsel's duties to a petitioner are set forth in Supreme Court Rule 651. Under Rule 651, the postconviction attorney is required to: (1) consult with the petitioner to ascertain his or her contentions of deprivations of constitutional rights, (2) examine the record of the proceedings at the trial, and (3) make any amendments to the *pro se* petition that are necessary for an adequate presentation of the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). When it drafted the Post-Conviction Hearing Act, the General Assembly anticipated that most petitions filed under the Act would be filed by *pro se* prisoners who lacked the assistance of counsel. *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 33 (citing *People v. Johnson*, 154 Ill. 2d 227, 237 (1993)). Thus, the Act obligates second-stage postconviction counsel to ensure that a petitioner's claims are adequately presented, with counsel ascertaining the basis of the claims, shaping the claims into an appropriate legal form, and presenting the petitioner's contentions to the court. *Id*. Whether postconviction counsel has complied with Rule 651(c) and provided reasonable assistance are questions we review *de novo*. *People v. Perkins*, 229 Ill. 2d 34, 41 (2007); *People v. Turner*, 2023 IL App (1st) 191503, ¶ 22.

¶ 31    Postconviction counsel can comply with Rule 651 in two ways: (1) filing a certificate as expressed in subsection (c) of the Rule attesting to compliance with the Rule's requirements; or (2) carrying out the representation in such a manner that the record as a whole demonstrates counsel's compliance with the Rule. *People v. Richmond*, 188 Ill. 2d 376, 380 (1999). Postconviction counsel in this case filed a certificate under Rule 651(c). When postconviction counsel files a certificate under Rule 651(c), a rebuttable presumption arises that the petitioner received the level of representation Rule 651 requires. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. To overcome this presumption, the petitioner must demonstrate that postconviction counsel failed to substantially comply with the duties imposed by Rule 651(c). *People v. Jones,* 2011 IL App (1st) 092529, ¶ 23.

¶ 32    Defendant argues that, despite filing a certificate under Rule 651(c), postconviction counsel was ineffective for failing to adequately present his arguably meritorious claim that his trial counsel failed to present evidence of the mitigating effects of his mental illness during sentencing. Defendant claims that the relevant error by postconviction counsel was counsel's failure to present his claims to the court in an appropriate legal form (citing *Johnson*, 154 Ill. 2d at 245). Defendant relies on the fact that postconviction counsel did not amend or supplement his *pro se* postconviction claim in which he alleged that his trial counsel was ineffective during sentencing, and that postconviction counsel did not attempt to bolster the *pro se* claims in any way during the postconviction proceedings.

¶ 33    The State contends that defendant's claim of ineffective assistance of counsel during sentencing fails because defendant is arguing that counsel should have used the medical records attached to his petition to develop an entirely new claim that was not raised in his *pro se* petition:

that trial counsel was ineffective for failing to acquire and present additional mitigation evidence at sentencing.

¶ 34 The State explains that the Illinois Supreme Court "has been definitive in stating that post-conviction counsel need only amend the pro se petition to 'properly present the *petitioner's* claims' (quoting *People v. Smith*, 2022 IL 126940, ¶ 29 (emphasis in original)), and postconviction counsel has no duty to amend a *pro se* petition to include a new claim that a petitioner fails to raise in his *pro se* pleading (citing *People v. Davis*, 156 Ill. 2d 149, 164-65 (1993)).

¶ 35 We disagree with the State's argument that defendant is raising a new claim. The case law the State relies upon to support its argument speaks to counsel not having an obligation to raise a claim that finds no basis in the record or in the *pro se* petition. See, *e.g.*, *People v. Rials*, 345 Ill. App. 3d 636, 643 (2003). The State is obviously correct that postconviction counsel has no obligation to raise a novel claim on a petitioner's behalf which is not supported by the allegations and evidence in the original petition. *Davis*, 156 Ill. 2d at 164. The record in this case demonstrates to us, however, that defendant already raised the claim on his own in his *pro se* petition.

¶ 36 In his *pro se* petition, defendant's second claim asks: "Whether appellate counsel was ineffective for failure to raise as error on appeal trial counsel's ineffectiveness for failure to object when the trial judge improperly considered in aggravation that defendant killed the victim out of rage and/or jealousy and refused to consider defendant's mental illness and prospects for rehabilitation." In just the issue statement for his second claim, defendant implicated both trial and appellate counsel's alleged ineffectiveness during sentencing and the impact of his mental illness in the sentencing process. Here, in claiming that postconviction counsel was ineffective,

defendant argues that postconviction counsel should have argued that his trial counsel was ineffective for failing to investigate and present as mitigation during sentencing the effect defendant's mental illness had on the nature of his acts.

¶ 37    In support of his *pro se* claim that trial counsel was ineffective during sentencing, defendant alleged that "he did not receive a fair sentencing hearing because the [trial] judge considered an inappropriate, irrelevant factor in aggravation and apparently refused to consider appropriate, relevant mitigation." Defendant went on to allege that the trial judge "erred by refusing to consider defendant's mental illness and potential for rehabilitation." Defendant alleged that his history of mental problems lessened his blameworthiness in this case. Defendant pointed out in his *pro se* petition that the trial court did not mention his mental illnesses during the sentencing hearing. Defendant further pointed out that his trial counsel did not object during the sentencing hearing, though defendant does concede that trial counsel mentioned to the court that he suffers from bipolar disorder. Defendant argued in his *pro se* petition that, after his trial counsel failed to raise these relevant issues, his appellate counsel was similarly ineffective for failing to raise the sentencing issue in his direct appeal.

¶ 38    In his postconviction petition, defendant argued that his trial counsel was ineffective due to a lack of preparation and diligence and, given the importance of the medical records, counsel's failure to locate the records constituted ineffective assistance of counsel. Defendant wrote that counsel had an affirmative obligation to conduct an inquiry and obtain readily available evidence that would have raised genuine questions about defendant's mental condition. Defendant further argued in the first claim of his *pro se* petition that the medical records and his mental health history, which are outside the trial record, would probably have changed the outcome in his case.

¶ 39 Going beyond the allegations in the petition to the attached evidence, defendant provided relevant evidence that was not presented at trial. Defendant attached evidence demonstrating that he has had a severe, virtually lifelong problem with anger issues as a result of his mental illness and troubled childhood. Particularly, defendant attached to his *pro se* petition a record from the Illinois Department of Health from four and a half years before defendant killed Williams. In that record, defendant reported to the interviewer that he would black out and have no control of his behavior when he got angry. The record also showed that the staff at the mental health institution corroborated that, when angry, defendant entered into a dissociative state where defendant would not be aware of his actions and would be nonresponsive to the staff's attempted interventions so long as he remained in that angry, dissociative state.

¶ 40 To present the postconviction claim that defendant argues should have been presented, counsel did not need to scour the record in search of grounds for relief or create a claim out of whole cloth. The original postconviction petition contains specific allegations that trial counsel should have investigated and presented defendant's mental health records, and it explains how trial counsel could have used the evidence to potentially obtain a better sentencing outcome for defendant. Thus, the issue was not new as it is adequately stated in defendant's *pro se* petition, and we reject the argument that defendant's claims must be dismissed based on the principle that counsel need not raise new claims.

¶ 41 Defendant does not argue that his postconviction counsel failed to reasonably perform the first two requirements of Rule 651(c): consulting with him to ascertain his potential claims and examining the record of proceedings. Indeed, the record contains abundant evidence of counsel's communications with defendant and the considerable efforts she made to assist him in the postconviction proceedings, including issuing subpoenas to several entities, investigating

defendant's suicide attempts, interviewing defendant's trial counsel, and hiring an expert to review records. Defendant argues, however, that postconviction counsel failed to reasonably perform the third requirement of Rule 651(c): to make any amendments to the *pro se* petition that are necessary for an adequate presentation of the petitioner's contentions.

¶ 42    Defendant contends that postconviction counsel failed to shape his *pro se* claims into proper legal form. Defendant contends that "the inartfully pled *pro se* allegations and arguments of the claim required counsel's amendment 'for an adequate presentation of petitioner's contentions' in order to survive the second stage." Defendant makes several similar statements throughout his brief on appeal. He argues that his claim was "doomed" as a result of counsel's inaction. However, in all the instances in which defendant claims that counsel should have amended his *pro se* claim, defendant never identifies what counsel specifically needed to modify to adequately plead the claim, nor does defendant identify how the claim in the *pro se* petition was legally inadequate as it was pled.

¶ 43    Defendant repeatedly makes the generalized statement that counsel should have developed his *pro se* claim. He argues that his claim had merit and reasonable counsel would have taken steps to shape it into proper legal form. He does not, however, identify what type of development was needed or point out how the claim was in improper form. The trial court was able to identify and assess defendant's *pro se* claim, and it adjudicated the claim on the merits. Defendant proceeds to argue the merit of his postconviction claim that he raised *pro se*, but all the information and arguments were presented in his *pro se* petition and were put before the trial court for adjudication as a second-stage postconviction claim. The trial court expressly indicated at the second-stage hearing that it reviewed the *pro se* issues defendant raised and found that they lacked merit.

¶ 44    Defendant relies on *People v. Thompson*, 2016 IL App (3d) 150644 to support his claim that his postconviction counsel provided unreasonable assistance. The defendant in *Thompson* filed a postconviction petition alleging he was unfit to waive his right to trial counsel. He argued a review of his pretrial mental health records was required to reasonably present his claim. He argued on appeal that his postconviction counsel was ineffective for failing to obtain and review his mental health records in order to shape his *pro se* claim into appropriate legal form. *Id*. at ¶¶ 1, 21. This court held that, "[b]ecause postconviction counsel did not obtain and review defendant's pretrial mental health records, [ ] the record rebuts the presumption that counsel took the steps necessary to adequately present defendant's claim. *Id*. at ¶ 23.

¶ 45    Here, defendant does not argue that postconviction counsel failed to review the relevant records. The records were attached to defendant's *pro se* petition and counsel incorporated the *pro se* claims into each pleading. In *Thompson*, we observed that counsel's failure to obtain the records constituted unreasonable assistance because failure to support claims in a postconviction petition with affidavits or other evidence guarantees dismissal of the claim. *Id*. at ¶ 26. *Thompson* is thus distinguishable from this case because defendant attached all the relevant records to his petition and his postconviction counsel reviewed them and incorporated them at each step of the proceedings. Defendant's postconviction claims were not subject to dismissal on the basis of a failure to attach evidentiary support.

¶ 46    In other cases where we have found counsel to have failed to provide reasonable assistance based on the failure to amend or shape a petitioner's claim, we have been able to identify specific action counsel might have taken to preserve or otherwise bolster the *pro se* postconviction claim. For example, in *People v. McDonald*, 2018 IL App (3d) 150507, ¶ 28, a petitioner claimed in his *pro se* petition that he would have not pled guilty if he knew about the

terms of mandatory supervised release. We explained that postconviction counsel failed to provide reasonable assistance because counsel did not amend the *pro se* claim to specify that either defendant's due process rights were violated by the court failing to advise him about the terms of supervised release or that his trial counsel was ineffective for failing to advise him of the terms. *Id*. The petitioner was able to identify a specific action that counsel should have taken to make his claim legally viable. *Id*. at ¶¶ 28-31; see also *People v. Perkins*, 229 Ill. 2d 34, 48-49 (2007) (holding that "Rule 651(c) requires amendment of an untimely petition to allege any available facts showing the delay in filing was not due to the petitioner's culpable negligence); *People v. Turner*, 187 Ill. 2d 406, 414 (1999) (postconviction counsel's failure to make a routine amendment to overcome a procedural bar of waiver constituted unreasonable assistance).

¶ 47    Here, defendant has failed to identify anything making his original, *pro se* postconviction claim legally or factually invalid. In *McDonald*, we explained that the *pro se* petition at issue there "did not state a legally sufficient claim and therefore required amendment by counsel so that such a claim could be formed." *Id*. at ¶ 31. As we observed when analyzing the State's argument about counsel not being required to raise novel claims, defendant put forth all the allegations and evidence needed to make a claim that his trial counsel should have raised the issue of his blackouts and mental illness as mitigation during sentencing. Here, the trial court was well apprised of defendant's mental illnesses and his extensive psychiatric history. The trial court was repeatedly informed during trial and again by the State at the sentencing hearing that defendant blacked out when he got angry and then did not know what happened during that period. Defendant had consistently relied on his blackouts to explain the killing since the time he was arrested.

¶ 48    Everything that needed to be in the postconviction petition to present his claim to the court was present. Defendant fails to identify what amendment was necessary for an adequate presentation of his contentions.

¶ 49    Defendant acknowledges that there is a presumption of reasonable assistance once counsel has filed a certificate under Rule 651 (*Profit*, 2012 IL App (1st) 101307, ¶ 19) and, accordingly, defendant must establish that counsel unreasonably failed to amend his petition by pointing to affirmative evidence in the record (*People v. Wallace*, 2016 IL App (1st) 142758, ¶¶ 27-28). Defendant fails to overcome the presumption of reasonable assistance here where defendant fails to identify any defect counsel needed to remedy for an adequate presentation of his claim. "Counsel need not amend the petition or every claim; *counsel may conclude that the claim is already adequately addressed* or that a claim is frivolous and undeserving of further amendment (emphasis added)." *People v. Nesbitt*, 2023 IL App (1st) 211301, ¶ 37; see also *People v. Turner*, 2023 IL App (1st) 191503, ¶ 38 ("nothing in the record on appeal contradicts counsel's certificate asserting that there were no amendments necessary for adequate presentation of petitioner's claims"); *People v. Diggins*, 2018 IL App (3d) 150645-U, ¶ 31 ("counsel was not required to amend the petition to include those facts because those facts were already set forth in the petition").

¶ 50    The trial court did not dismiss defendant's *pro se* postconviction claims due to any type of pleading error or a procedural or legal deficiency. Instead, the trial court addressed the claims raised in the *pro se* postconviction petition and stated that it "has reviewed those issues and finds that they lack merit." Based on the foregoing, we conclude that defendant has failed to overcome the presumption that postconviction counsel carried out the obligations in Rule 651(c) and therefore provided defendant with reasonable assistance.

¶ 51                                    CONCLUSION

¶ 52    Accordingly, we affirm.

¶ 53    Affirmed.